**Gretta M. McKELLIPS, Nelrose Margaret Palenske, David McKellips, and Paul Mark McKellips, Appellants,**

v.

**SAINT FRANCIS HOSPITAL, INC., Emergency Care, Inc., and George B. Caldwell, M.D., Appellees.**

No. 66636.

Supreme Court of Oklahoma.

July 21, 1987.

Briggs, Patterson, Eaton & Berg by Dale J. Briggs and Steven J. Berg, Tulsa, for appellants.

T.J. Sinclair, General Counsel, Saint Francis Hosp., Inc., and Jones, Givens, Gotcher, Doyle & Bogan, Inc. by Deryl L. Gotcher and Joan Godlove, Tulsa, for appellee Saint Francis Hosp., Inc.

Best, Sharp, Thomas, Glass & Atkinson by Joseph A. Sharp and Patricia K. Lamb, Tulsa, for appellees Emergency Care, Inc. and George B. Caldwell, M.D.

HODGES, Justice.

On June 3, 1986, the United States Court of Appeals for the Tenth Circuit certified the following two questions of law to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1981 § 1602:

I. In a medical malpractice action under Oklahoma law, absent evidence that the patient more likely than not would have survived with proper treatment, may a plaintiff establish causation under the loss of chance doctrine by presenting evidence that the alleged negligence lessened the chance of survival?

II. If the loss of chance doctrine is recognized in Oklahoma, is expert testimony that "unquestionably [the deceased's] chances would have been significantly improved" sufficient under that doctrine to create a question for the jury, notwithstanding the expert cannot quantify the increased chance of survival?

A review of the decisional law which sets forth the traditional causation standard to be applied in ordinary negligence actions in Oklahoma, as well as decisions from other jurisdictions which reevaluate the use of that standard in reference to a medical malpractice claim where a defendant has negligently breached an undertaking to prevent a certain harm, and adopt the loss of chance doctrine in those limited situations, persuade this Court to answer both questions in the affirmative.

This is an action for the wrongful death of Reverend Allan David McKellips (decedent) brought by his widow, Gretta M. McKellips, and his adult surviving children; Nelrose Margaret Palenske, David McKellips, John McKellips and Paul Mark McKellips (collectively plaintiffs/appellants). The action is brought against Saint Francis Hospital, Inc., a general hospital operated in the City of Tulsa, Oklahoma, and providing emergency room services to the public;

Emergency Care, Inc., which was under contract with the hospital to provide physicians for operation of the emergency room; and George B. Caldwell, M.D., the attending physician on duty in the emergency room at the time services were provided to decedent (collectively defendants/appellees).

On July 12, 1981, at 2:30 p.m., decedent was brought to the Saint Francis Hospital emergency room. The decedent was sixty-one years of age and moderately obese. He had a family history of heart disease although decedent himself did not have a prior history of heart disease. Decedent complained of pain over his breastbone radiating to both sides of his chest. After examination and testing, Dr. Caldwell diagnosed decedent's condition as gastritis and released him at approximately 4:15 p.m. Thereafter decedent suffered cardiac arrest and was returned to the hospital by helicopter. At 9:30 p.m. decedent was pronounced dead.

In 1983, suit was filed in the United States District Court for the Northern District of Oklahoma. At trial, appellants' expert witness, a board certified emergency physician, testified by deposition that appellees were negligent in diagnosing decedent as suffering from gastritis instead of a heart attack, and in releasing him rather than keeping him under observation for a reasonable period of time at the hospital. He further testified in his opinion based upon the hospital records decedent's "heart attack was probably well under way at the time of his visit to the emergency department the first time" and admitting decedent to the hospital for observation at that time would not have prevented the heart attack. However, he testified with regard to decedent's chances for survival or prevention:

"As far as improving his chances, I think unquestionably his chances would have been significantly improved. As to whether or not it would have, in fact,

changed the outcome, I think is a statistical probability statement that is difficult to answer. But as far as improving his chances, there's no question that that's true."

At the conclusion of appellants' evidence, appellees moved for a directed verdict on the ground that causation had not been established. The district court granted the motion for failure of appellants to prove the essential elements of their claim. The transcript reflects the district court assumed without deciding that Oklahoma would apply the loss of a chance doctrine, and determined appellants' evidence was insufficient with or without application of the doctrine.

## I.

The first certified question presented by this case is whether Oklahoma adheres to the loss of a chance doctrine in a medical malpractice action.

The three elements essential to a prima facie case of negligence are: (1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly exercise or perform that duty and (3) the plaintiff's injuries are proximately caused by the defendant's failure to exercise his duty of care.[1]

■■■ Proximate cause consists of two elements: cause in fact and legal causation.[2] Legal causation concerns a determination whether legal liability should be imposed as a matter of law where cause in fact is established and depends upon considerations of common sense and policy. Cause in fact, on the other hand, deals with the "but for" consequences of an act. "The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct."[3] The present matter involves only the question whether appellees or the decedent's underlying condition was the real cause—cause in fact—of his death. Therefore, our opinion does not

1. *Lay v. Dworman*, 732 P.2d 455, 457 (Okla. 1986); *Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 263 (Okla.1982).

2. Prosser and Keeton, *The Law of Torts* 263 (5th ed. 1984).

3. *Id.* at 266.

deal with the scope of proximate cause involved in the concept of legal causation. Generally, the question of cause in fact is for the jury. It is only when there is no evidence from which the jury could reasonably find a causal nexus between the negligent act and the resulting injury it becomes a question of law for the court.

■■■■ The sufficiency of the evidence to show cause in fact presents a question of law for the court.[4] Sufficiency of evidence is the "legal standard which is applied to determine whether the case may go to the jury."[5] A plaintiff's burden of proof of causation is twofold.[6] First, a plaintiff has the burden of producing evidence, satisfactory to the judge, that a reasonable person could believe in the existence of the causal link and that the evidence should be weighed by the jury. A verdict will be directed for the defendant if a plaintiff fails to carry this burden.[7] Secondly, a plaintiff bears the burden of persuasion should the evidence be allowed to reach the jury.[8] The standard for sufficiency of proof of evidence, related to a plaintiff's first burden, should not be confused with the standard of proof, associated with a plaintiff's second burden, which is applied by the jury in reaching a final verdict. Generally, in civil cases the standard of proof means a preponderance of the evidence. The certified questions concern the burden of production and sufficiency of proof of causation standard as to whether the causation issue should be submitted to the jury.

■■■■ In Oklahoma, the general principles of proof of causation in a medical malpractice action are the same as an ordinary negligence case. The reasonable probability standard for sufficiency of proof of causation is applied although it has been stated in varying language, such as "[t]he circumstances proved must lead to the conclusion with reasonable certainty and probability"[9] or "[w]hen such lay and expert testimony is considered together, it must warrant the conclusion that a preponderance of the evidence discloses facts and circumstances establishing a reasonable probability that defendant's negligence was the proximate cause of the injury".[10] Absolute certainty is not required, however, mere possibility or speculation is insufficient.[11] As stated above, if a plaintiff fails to meet his burden of sufficiency of proof of evidence to establish a prima facie issue of causation where the probabilities are evenly balanced or less, a defendant may be entitled to a directed verdict.[12]

An evolving trend has developed to relax the standard for sufficiency of proof of causation ordinarily required of a plaintiff to provide a basis upon which the jury may consider causation in the "lost chance of survival" cases. In the typical loss of a chance case, a plaintiff already has a condition or is subject to risk from a hazard, unlike a healthy plaintiff in most personal injury cases. A plaintiff claims the negligence has increased the risk of harm by hastening or aggravating the effect of the pre-existing condition or risk. Additionally, the typical case often involves a situation in which the duty breached by a tortfeasor is imposed to prevent the harm which ultimately becomes the basis for the damages sought. Often times these cases are pro-

---

4. *Thompson v. Presbyterian Hosp., Inc.,* 652 P.2d at 603.

5. Black's Law Dictionary 1285 (5th ed. 1979).

6. C. McCormick, *Handbook of the Law of Evidence* § 336, at 947 (3d ed. 1984).

7. *Id.* at § 338, at 952–953.

8. *Id.* at § 336, at 947.

9. *Boxberger v. Martin,* 552 P.2d 370, 374 (Okla. 1976); *Martin v. Stratton,* 515 P.2d 1366, 1371 (Okla.1973).

10. *Robertson v. LaCroix,* 534 P.2d 17, 21 (Okla. App.1975). See also *Downs v. Longfellow Corporation,* 351 P.2d 999, 1004 (Okla.1960) ("It is fundamental that a plaintiff, in order to impose liability upon a defendant, is required to establish, by a preponderance of the evidence, that the defendant was guilty of negligence which probably, not merely possibly, caused plaintiff's injury").

11. *Downs v. Longfellow Corporation,* 351 P.2d at 1005.

12. *Cf. Martin v. Stratton,* 515 P.2d 1366 (Okla. 1973).

blematic as the tort may prevent a determination of whether the exercise of due care under the circumstances could have produced a better result.[13] The concept was first recognized in non-medical negligence cases in failure to attempt to rescue situations.[14]

Various theories have been followed by the courts which have addressed the loss of chance concept in medical negligence cases. Several courts have recognized the loss of a significant chance as a new cause of action viewing the injury as the loss of a statistical chance of cure or survival.[15]

Others have relaxed the degree of certainty and have adopted the substantial factor test instead of the reasonable probability standard.[16]

Some jurisdictions have seemingly adopted a "substantial possibility" standard of sufficiency of the evidence.[17] *Hicks v. United States*, 368 F.2d 626 (4th Cir.1966), involving Virginia law, is the leading case often cited in a line of medical malpractice cases which has developed embodying the concept of deprivation of a chance. In that case the plaintiff, a diabetic patient, was taken to a hospital for abdominal pain and vomiting. The patient was diagnosed as having a minor problem and sent home where she died. Evidence disclosed had she had proper testing a high obstruction would have been revealed. Expert testimony established that the patient would have survived with prompt diagnosis and surgery. The Fourth Circuit Court of

Appeals stated in dictum in reversing the district court:

"When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. *If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable.* Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a certainty that the patient would have lived had she been hospitalized and operated on promptly. *Harvey v. Silber,* 300 Mich. 510, 2 N.W.2d 483 (1942)." 368 F.2d at 632. (Emphasis added).

The above language is an oft-repeated quote found in cases adopting the loss of a chance doctrine under the possibility standard of proof approach.[18] Even though the *Hicks* court used the phrase "substantial possibility" as providing a standard of proof, the plaintiff's evidence actually met a greater standard of proof.

Another approach followed by other jurisdictions is the Restatement (Second) of Torts § 323 (1965) theory which recognizes a breach of the duty imposed by that section carries with it an implication of causa-

---

**13.** W. Bradt and J. Guthmann, *Recovery for the Value of a Chance in Medical Negligence Cases: Bringing Minnesota's Standard of Causation up to Date,* 12 Wm. Mitchell L.Rev. 459, 492 (1986).

**14.** *Gardner v. National Bulk Carriers, Inc.,* 310 F.2d 284, 287 (4th Cir.1962), wherein it was stated: "[P]roximate cause here is implicit in the breach of duty. Indeed, the duty would be empty if it did not itself embrace the loss as a consequence of its breach."

**15.** *DeBurkarte v. Louvar,* 393 N.W.2d 131 (Iowa 1986); *Herskovits v. Group Health Cooperative of Puget Sound,* 99 Wash.2d 609, 664 P.2d 474, 486 (1983) (Pearson, J., concurring). *Cf. O'Brien v. Stover,* 443 F.2d 1013 (8th Cir.1971) (applying Iowa law); *Jeanes v. Milner,* 428 F.2d 598 (8th Cir.1970) (applying Arkansas law); *James v. United States,* 483 F.Supp. 581 (N.D. Cal.1980).

**16.** *Daniels v. Hadley Memorial Hospital,* 566 F.2d 749 (D.C.Cir.1977) (citing Restatement (Second) of Torts § 431 (1965)); *Roberson v. Counselman,* 235 Kan. 1006, 686 P.2d 149 (1984) (citing Restatement (Second) of Torts § 433B comments a and b (1965)).

**17.** *Brown v. Koulizakis,* 331 S.E.2d 440 (Va. 1985).

**18.** *E.g., Jeanes v. Milner,* 428 F.2d 598 (8th Cir. 1970); *James v. United States,* 483 F.Supp. 581 (N.D.Cal.1980); *Thomas v. Corso,* 265 Md. 84, 288 A.2d 379 (1972); *Kallenberg v. Beth Israel Hosp.,* 45 A.D.2d 177, 357 N.Y.S.2d 508 (1974). *But see Kimball v. Scors,* 59 A.D.2d 984, 399 N.Y.S.2d 350 (1977).

tion permitting the jury to decide the causation issue.[19] Section 323 provides in pertinent part:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm...."

In *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978), the Pennsylvania Supreme Court found it unnecessary to require medical testimony concerning what might have happened with proper diagnosis and treatment when the plaintiff could establish, to a reasonable degree of medical certainty, an increased risk of sustaining the harm that ultimately occurred. The court held a prima facie case of causation is established with proof of a Section 323 violation:

"Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm." 392 A.2d at 1286.

In carving out an exception based on § 323 to the traditional test of sufficiency of the evidence, the *Hamil* court recognized that uncertain evidence may be the only evidence available in this type of medical malpractice case. The court explained:

"[W]e do not intend to undermine the well-established standard of 'reasonable degree of medical certainty' as the accepted norm for medical opinions on causation. But we think it would be unreasonable and unrealistic in this type of case to expect a physician to state with a 'reasonable degree of medical certainty' what *might* have happened when the law (Section 323(a)) recognizes the contingencies involved." *Id.* at 1288.

Although in *Hamil* the patient had a greater than fifty percent chance of recovery with proper treatment, other cases have adopted the reasoning where the survival possibility was less than fifty percent.

In *Herskovits*, 99 Wash.2d 609, 664 P.2d 474, 475 (1983), that court considered the issue "whether a patient, with less than a 50 percent chance of survival, has a cause of action against the hospital and its employees if they are negligent in diagnosing a lung cancer which reduces his chances of survival by 14 percent." In adopting the value of a lost chance theory under the Restatement § 323 approach it stated:

"To decide otherwise would be a blanket release from liability for doctors and hospitals any time there was less than a 50 percent chance of survival, regardless of how flagrant the negligence."

We acknowledge, however, that a minority of jurisdictions have rejected the lost chance of survival concept and retained the requirement that the medical malpractice plaintiff must show that the injury more likely than not resulted from the defendant's negligence.[20]

**19.** *E.g., Thompson v. Sun City Community Hospital, Inc.,* 141 Ariz. 597, 688 P.2d 605 (1984) (no probability testimony, case may go to jury upon proof of increased risk of harm); *Aasheim v. Humberger,* 695 P.2d 824 (Mont.1985) (probability testimony of greater than 50 percent chance of good result not required); *Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981) (expert testimony only required to show defendant's conduct increased the risk of harm actually sustained); *Herskovits v. Group Health Cooperative of Puget Sound,* 99 Wash.2d 609, 664 P.2d 474 (1983) (reduction in chances of survival from 39 to 25 percent sufficient to establish jury question on causation) (see particularly the concurring opinion of Pearson, J., which

presents a detailed review of the cases considering the loss of chance doctrine). *See also Lay v. Dworman,* 732 P.2d 455 (Okla.1986), wherein this Court adopted the principles embodied in Restatement (Second) of Torts § 323 (1965) in the context of the landlord-tenant relationship concerning the landlord's liability for failure to maintain the actual security of the leased premises.

**20.** *Rewis v. United States,* 503 F.2d 1202 (5th Cir.1974) (applying New Mexico law); *Morgenroth v. Pacific Medical Center Inc.,* 54 Cal.App.3d 521, 126 Cal.Rptr. 681 (1976); *Gooding v. University Hosp. Bldg., Inc.,* 445 So.2d 1015 (Fla. 1984); *Curry v. Summer,* 136 Ill.App.3d 468, 91

The Supreme Court of Florida in *Gooding v. University Hosp. Bldg., Inc.*, 445 So.2d at 1019–21, stated the common rationale for rejecting the theory:

"Relaxing the causation requirement might correct a perceived unfairness to some plaintiffs who could prove the possibility that the medical malpractice caused an injury but could not prove the probability of causation, but at the same time could create an injustice. Health care providers could find themselves defending cases simply because a patient fails to improve or where serious disease processes are not arrested because another course of action could possibly bring a better result. No other professional malpractice defendant carries the burden of liability without the requirement that plaintiffs prove the alleged negligence probably rather than possibly caused the injury."

The minority position places "a premium on each party's search for the willing witness." *Thompson v. Sun City Community Hosp., Inc.*, 688 P.2d 605, 615 (Ariz. 1984). Under the present standard of probability applied in all negligence cases in Oklahoma, an expert must speak the "magic words", i.e., that the defendant's conduct more probably than not caused the injury, to ensure that a verdict will not be directed for the defendant. In essence, a plaintiff must prove that the patient had a better-than-even chance of recovery in the absence of the physician's negligence. Such an approach when applied in situations where the duty breached is one imposed to prevent the type of harm which a patient ultimately sustains, actually prevents recovery for the effects of conduct that may cause statistically irrefutable losses. By so doing, this view tends to subvert the deterrence function of tort law. In *Roberson v. Counselman*, 235 Kan. 1006, 686 P.2d 149, 160 (1984), the Supreme Court of Kansas criticized the minority position stating:

"The reasoning ... in essence, declares open season on critically ill or injured persons as care providers would be free of liability for even the grossest malpractice if the patient had only a fifty-fifty chance of surviving the disease or injury even with proper treatment. Under such rationale a segment of society often least able to exercise independent judgment would be at the mercy of those professionals on whom it must rely for life-saving health care."

The majority of jurisdictions that have considered the lost chance of survival doctrine in medical malpractice action cases have adopted it under one of the approaches discussed above. After a considered reading of those cases, we believe the Restatement (Second) of Torts § 323 approach under the majority position to be the preferable and most rational theory. We think in those situations where a health care provider deprives a patient of a significant chance for recovery by negligently failing to provide medical treatment, the health care professional should not be allowed to come in after the fact and allege that the result was inevitable inasmuch as that person put the patient's chance beyond the possibility of realization. Health care providers should not be given the benefit of the uncertainty created by their own negligent conduct. To hold otherwise would in effect allow care providers to evade liability for their negligent actions or inactions in situations in which patients would not necessarily have survived or recovered, but still would have a significant chance of survival or recovery.

Today's pronouncement adopts the loss of a chance doctrine in Oklahoma in a limited type of medical malpractice case where the duty breached was one imposed to prevent the type of harm which a patient ultimately sustains and because of the inherent nature of such a case a plaintiff is unable to produce evidence of causation sufficient to meet the traditional rule of

Ill.Dec. 365, 483 N.E.2d 711 (4 Dist.1985); *contra Northern Trust Co. v. Louis A. Weiss Memorial Hospital*, 143 Ill.App.3d 479, 97 Ill.Dec. 524, 493 N.E.2d 6 (1 Dist.1986). *See Walden v. Jones*, 439 S.W.2d 571 (Ky.App.1968); *Cornfeldt v.*

*Tongen*, 295 N.W.2d 638 (Minn.1980); *Clayton v. Thompson*, 475 So.2d 439 (Miss.1985); *Cooper v. Sisters of Charity of Cincinnati, Inc.*, 27 Ohio St.2d 242, 272 N.E.2d 97 (1971); *Hanselmann v. McCardle*, 275 S.C. 46, 267 S.E.2d 531 (1980).

causation. We note that our decision today does not change the traditional principles of causation in the ordinary negligence case and this new rule applies only in those limited situations as presented here.

Furthermore, we emphasize the new standard of sufficiency of proof adopted by our pronouncement lowers a plaintiff's burden of production to enable him/her to more easily establish a jury question on the issue of causation on a showing of substantial decrease in the chance of survival, rather than a judge directing a verdict or dismissing for failure to make a case for causation. In effect, the lowered standard merely reallocates the power to decide the causation issue, giving the jury a greater role in the decision making process. Once the case reaches the jury, however, the plaintiff still has the burden of persuading the jury by a preponderance of the evidence.[21] The jury would be required to determine whether the increase in risk under the circumstances was more likely than not a substantial factor in causing the harm.[22]

## II.

■ With regard to the second certified question concerning whether expert testimony must be expressed in terms of percentage probabilities under the loss of a chance approach adopted herein to allow the causation issue to go to the jury, we hold percentage probability testimony is not required. In the instant case testimony that "unquestionably [the deceased's] chances would have been significantly improved" is sufficient to take the case to the jury even in the absence of testimony which quantifies the increased chance of survival. We find it unnecessary to require a precise percentage increment of chance of recovery or survival to create a jury question on causation.

■ However, statistical evidence combined with evidence linking the probabilities to the patient in the case should be considered by the jury in apportioning damages. We believe it is better to limit probabilistic proof to the damage issue.[23] Once the issue of causation goes to the jury upon proof of the defendant's conduct increased the risk of harm or death by substantially decreasing the chance of recovery or survival, it is the jury's task, not the medical expert's, to determine whether the defendant's negligence was a cause in fact of the patient's injury. *Thompson,* 688 P.2d at 614–16. It is within the jury's province to make the determination whether a health care provider's failure to use reasonable care increased the risk of the harm he undertook to prevent by substantially decreasing the chance of recovery or survival, and upon such finding of fact the jury may determine that the tortious act of malpractice was in turn a substantial factor in causing a patient's injury or death.[24]

## III.

■ It is necessary in answering the certified questions posed for us to address apportionment of damages. We note that in medical malpractice cases where application of the loss of chance doctrine is appropriate, damages must be limited to only those proximately caused from a defendant's breach of duty. Otherwise, the traditional principles of causation would be dis-

---

**21.** Note, *Increased Risk of Harm: A New Standard for Sufficiency of Evidence of Causation in Medical Malpractice Cases,* 65 B.U.L.Rev. 275, 278–79, 302, 306 (1985).

**22.** "The law is clear in Oklahoma that if a defendant's actions contributed to cause the injury, the defendant is liable even though his/her act or negligence *alone* might not have been a sufficient cause." *Bode v. Clark Equipment Co.,* 719 P.2d 824, 827 (Okla.1986). *See also* Prosser and Keeton, *supra* note 2, at 270 which states where "the injury which has in fact occurred is precisely the sort of thing that proper care on

the part of the defendant would be intended to prevent ... a certain liberality to the jury in drawing its conclusion" should be allowed. Such a situation may provide a basis from which the proximate causation link may be reasonably inferred. *Accord Lay v. Dworman,* 732 P.2d at 460; *Roberson v. Counselman,* 686 P.2d at 153.

**23.** *Herskovits v. Group Health Co-op.,* 664 P.2d at 487 n. 2 (Pearson, J. concurring); *id.* at 490 n. 1 (Brachtenbach, J., dissenting).

**24.** See *supra* note 22.

torted. We specifically point to the language of the Supreme Court of Washington in *Herskovits v. Group Health Co-op.*, 664 P.2d at 479:

> "Causing reduction of the opportunity to recover (loss of chance) by one's negligence, however, does not necessitate a total recovery against the negligent party for all damages caused by the victim's death. Damages should be awarded to the injured party or his family based only on damages caused directly by premature death, such as lost earnings and additional medical expenses, etc."

The above discussion of damages does not however offer a clear method as to how the damage award should be adjusted. We do not believe a court should rely solely on a jury's common sense to discount the damage award to reflect the uncertainty of causation. One commentator has suggested a meaningful method of valuing damages in the loss of chance cases which we find instructive. J. King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353 (1981).[25] This method is advantageous as it is simple to apply and accomplishes a more predictable result. Under this method statistical evidence with regard to the decedent's reduction of his chance to recover or survive is utilized to determine the amount of damages recoverable. Although we found in Part II above that statistical evidence is not necessary to create a causation issue for the jury, statistical data relating to the extent of the decedent's chance of survival is necessary in determining the amount of damages recoverable after liability is shown. Statistical evidence, however, merely provides a base estimate and is not in itself sufficient to make the damage determination. Facts relevant to the particular patient should also be weighed in determining the net reduced figure used to represent the patient's loss of survival chance attributable to the defendant's negligence.

The amount of damages recoverable is equal to the percent of chance lost multiplied by the total amount of damages which are ordinarily allowed in a wrongful death action.[26] After consideration of the statistical evidence of the original and diminished chance of survival presented by both sides as well as other factors which are peculiar to the individual decedent, the jury should select from the figures presented or choose appropriate figures to find the percentage of original chance of survival in absence of negligence and the percentage of diminished chance resulting from the defendant's negligence in order to determine the net reduced figure. The percentages and net reduced figure should be found and added by the jury through a

---

**25.** King, *supra* text, at 1382, provides the following illustration:

"To illustrate, consider a patient who suffers a heart attack and dies as a result. Assume that the defendant-physician negligently misdiagnosed the patient's condition, but that the patient would have had only a 40% chance of survival even with a timely diagnosis and proper care. Regardless of whether it could be said that the defendant caused the decedent's death, he caused the loss of chance and that chance-interest should be completely redressed in its own right. Under the proposed rule, the plaintiff's compensation for the loss of the victim's chance of surviving the heart attack would be 40% of the compensable value of the victim's life had he survived (including what his earning capacity would otherwise have been in the years following death). The value placed on the patient's life would reflect such factors as his age, health, and earning potential, including the fact that he had suffered the heart attack and the assumption that he had survived it. The 40% compu-

tation would be applied to that base figure." (Footnotes omitted).
*Accord Mays v. United States*, 608 F.Supp. 1476 (D.C.Colo.1985); *Herskovits v. Group Health Co-operation of Puget Sound*, 664 P.2d at 486 (Pearson, J. concurring) (J. Pearson in advocating use of King's discount method failed however to illustrate application of the method to the facts of *Herskovits*). *See also* Prosser and Keeton, *supra* note 2, at 272; Case Comment, *Recovery for "Loss of Chance" in a Wrongful Death Action*, 59 Wash.L.Rev. 981, 989 (1984).

**26.** Damages recoverable in actions for wrongful death in Oklahoma are contained in 12 O.S.1981 § 1053 which includes medical and burial expenses, loss of consortium and grief of the surviving spouse, mental pain and anguish suffered by the decedent, pecuniary loss to the survivors, grief and loss of companionship of the children and the decedent, and in proper cases, punitive damages.

general verdict. Okla. Const. art. 7, § 15; 12 O.S.1981 § 588; *Smith v. Gizzi,* 564 P.2d 1009 (Okla.1977). The trial court should then multiply the total amount of damages by the net reduced figure to determine the final damage award.

To illustrate the method in a case where the jury determines from the statistical findings combined with the specific facts relevant to the patient the patient originally had a 40% chance of cure and the physician's negligence reduced the chance of cure to 25%, (40% − 25%) 15% represents the patient's loss of survival. If the total amount of damages proved by the evidence is $500,000, the damages caused by defendant is 15% × $500,000 or $75,000.[27]

We believe this method of valuation constitutes the proper view for determining damages in a medical malpractice action where the loss of chance doctrine is applied.

Accordingly, we find if defendants in the present case are found liable the award of damages must be reduced to reflect the probability that defendants caused the death, and recovery is permitted only for the percent of chance lost times the total amount of damages which are ordinarily allowed. This approach provides a fair method of apportioning the damages to account for the decedent's pre-existing condition. An award of *all* damages for the underlying injury, i.e., death, is precluded.

### CONCLUSION

In summary, we hold in medical malpractice cases involving the loss of a less than even chance of recovery or survival where the plaintiff shows that the defendant's conduct caused a substantial reduction of the patient's chance of recovery or survival, irrespective of statistical evidence, the question of proximate cause is for the jury. We further hold if a jury determines the defendant's negligence is the proximate cause of the patient's injury, the defendant is liable for only those damages proximately caused by his negligence which aggravated a pre-existing condition. Consequently,

---

**27.** Note, *supra* note 21, at 306.

a total recovery for all damages attributable to death are not allowed and damages should be limited in accordance with the prescribed method of valuation.

QUESTIONS ANSWERED.

DOOLIN, C.J., and LAVENDER, OPALA, ALMA WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs in result.

HARGRAVE, V.C.J., and SIMMS, J., dissent.