Sheri **ESTEP**, as Personal Representative of the Estate of Judith West, Deceased, Appellant,

v.

**ROSS E. POPE, D.O., P.C.; and, Ross E. Pope, Individually, Appellee.**

No. 77321.

Court of Appeals of Oklahoma, Division No. 1.

June 23, 1992.

Certiorari Denied Dec. 9, 1992.

Howard F. Israel, Edward L. Ray, Carol P. Hubbard, Charles L. Sifers, Oklahoma City, for appellant.

Jake Jones, III, Oklahoma City, for appellee.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

Appellant's decedent, Judith West (West), went to her family doctor, Ross E. Pope, D.O. (Pope) on March 19, 1986, complaining of a lump in her left breast. Pope examined West's breast and ordered a mammogram. It was done June 30, 1986. After the mammogram, Pope informed West that the lump was not cancerous, but was a fibrocystic condition.

West continued to see Pope for various other ailments over approximately the next two (2) years. West claimed that she constantly brought up the lump and complained that it was giving her difficulties. Pope stated that she did not mention the lump during those visits.

In March, 1988, West consulted a different doctor. The second doctor observed that the left breast was red and there were two areas that had broken skin and were draining, the whole left side of the left breast was involved in "a malignant process", and the skin looked dead or eaten away. The second doctor sent West to a cancer specialist who performed a radical mastectomy and removed a lump 8.3 cen-timeters in size. After the mastectomy, West underwent chemotherapy treatment from April, 1988, until her death in December, 1988. It was during the April to December, 1988, time period that it was discovered that the cancer had spread to other organs which resulted in West's death.

Before her death, West filed a medical malpractice action against Pope. The action was pending when she died. Sheri Estep, West's Personal Representative (P.R.), was substituted as Plaintiff. The case was tried before a jury which returned a verdict in favor of Pope, finding him forty percent (40%) negligent and West sixty percent (60%) negligent. Judgment was entered accordingly.

The issue presented in this appeal relates to the Court's instructions to the jury. A trial court has the duty, on its own motion, to instruct the jury properly as to all of the fundamental issues of the case. *Young v. First State Bank, Watonga,* 628 P.2d 707 (Okl.1981). However, failure to give requested instructions on issues not supported by the evidence is not error. *Nail By and Through Nail v. Oklahoma Children's Memorial Hospital,* 710 P.2d 755 (Okl.1985). "The tests on review of instructions given or refused are whether there is a probability that the jurors were misled and thereby reached a different conclusion than they would have reached but for the questioned instruction, or there was excluded from consideration a proper issue of the case." *Lee v. Cotten,* 793 P.2d 1369, 1371 (Okl.App.1990).

P.R. contends that "loss of chance" as a basis of recovery was an issue in this case. For reversal, P.R. contends the trial court erred in refusing to give a loss of chance instruction to the jury; and, the instructions given, which were traditional causation and contributory negligence instructions, constituted reversible error. Pope contends that the loss of chance doctrine was not applicable to this case; and, in the alternative, even if the trial court should have given a loss of chance instruction, any error was harmless, in view of the evidence, and reversible error has not been demonstrated.

**362**

The loss of chance doctrine involves the burden of proving causation in a limited number of cases. Oklahoma adopted the loss of chance doctrine in *McKellips v. Saint Francis Hospital, Inc.*, 741 P.2d 467 (Okl.1987).

The *McKellips* Court discussed various theories followed by courts which have addressed the "loss of chance" concept in medical negligence cases. Some courts recognize it as a new cause of action. Other courts relaxed the degree of certainty and adopted the substantial factor test instead of the reasonable probability standard. Some follow a substantial possibility standard of sufficiency of the evidence. A minority of the states retain the requirement that the medical malpractice plaintiff must, in all cases, show that the injury, more likely than not, resulted from the defendant's negligence.

After discussing the divergent views and decisions of various courts, the *McKellips* Court said: (741 P.2d at p.p. 474–475)

> After a considered reading of those cases, we believe the Restatement (Second) of Torts § 323 approach under the majority position to be the preferable and most rational theory. We think in those situations where a health care provider deprives a patient of a significant chance for recovery by negligently failing to provide medical treatment, the health care professional should not be allowed to come in after the fact and allege that the result was inevitable inasmuch as that person put the patient's chance beyond the possibility of realization. Health care providers should not be given the benefit of the uncertainty created by their own negligent conduct. To hold otherwise would in effect allow care providers to evade liability for their negligent actions or inactions in situations in which patients would not necessarily have survived or recovered, but still would have a significant chance of survival or recovery.
> *Today's pronouncement adopts the loss of a chance doctrine in Oklahoma in a limited type of medical malpractice case* where the duty breached was one

imposed to prevent the type of harm which a patient ultimately sustains and *because of the inherent nature of such a case a plaintiff is unable to produce evidence of causation sufficient to meet the traditional rule of causation.* We note that our decision today does not change the traditional principals of causation in the ordinary negligence case and *this rule applies only in those limited situations as presented here.*

> Furthermore, we emphasize the new standard of sufficiency of proof adopted by our pronouncement lowers a plaintiff's burden of production to enable him/her to more easily establish a jury question on the issue of causation on a showing of substantial decrease in the chance of survival, rather than a judge directing a verdict or dismissing for failure to make a case for causation. (Emphasis supplied.)

Pope contends the evidence presented at trial as to the issue of causation was sufficient to sustain a verdict for Appellant, if that had been the verdict of the jury. P.R. does not dispute this contention.

The *McKellips* Court expressly limited the application of loss of chance. It is available to a plaintiff "only in those situations" described by the court in adopting the rule. Lost chance may not be applied when traditional causation can be or has been established, as it was here. The trial court's exclusion of the loss of chance instruction was correct.

We find that the trial court's instructions fairly submitted the issues to the jury, as justified by the evidence presented.

AFFIRMED.

BAILEY and ADAMS, JJ., concur.