RANDY GENE HAUSKINS and wife, )
CAMMY HAUSKINS, )
           )        Appeal No.
     Plaintiffs/Appellants, )        01A01-9806-CV-00284
           )
v. )        Sumner Circuit
           )        No. 16594-C
TRI COUNTY ELECTRIC )
MEMBERSHIP CORPORATION, )
           )
     Defendant/Appellee. )

**FILED**

August 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY

AT GALLATIN, TENNESSEE

THE HONORABLE THOMAS GOODALL, JUDGE

C. TRACEY PARKS
Harsh, Parks & Harsh
123 Public Square
Gallatin, Tennessee 37066
     ATTORNEY FOR PLAINTIFFS/APPELLANTS

THOMAS M. DONNELL, JR.
JENNIFER A. LAWRENCE
Stewart, Estes & Donnell
Suite 1401 SunTrust Center
424 Church Street
Nashville, Tennessee 37219
     ATTORNEYS FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

Plaintiffs, Randy Gene Hauskins and Cammy Hauskins, are husband and wife. At the time of the accident resulting in his very serious injuries, Mr. Hauskins was a framing carpenter working for Terry Gregory, subcontractor of Coates Construction Company, in the construction of a new home in Sumner County, Tennessee. The defendant, Tri County Electric Membership Corporation, distributes electric power through distribution lines owned and maintained by Tri County.

At all times material in this case, the following sections of Tennessee Code Annotated were in full force and effect:

> 68-103-102. **Guarding against accidental contact by employee.** No person, firm, or corporation, or agent of same, shall require or permit any employee to perform any function in proximity to high-voltage lines; to enter upon any land, building, or other premises and there to engage in any excavation, demolition, construction, repair or other operation; or to erect, install, operate, or store in or upon such premises any tools, machinery, equipment, materials, or structures, including house moving, well drilling, pile driving or hoisting equipment, unless and until danger from accidental contact with such high-voltage lines has been effectively guarded against in the manner hereinafter prescribed.

> 68-103-103. **Clearance or safeguard required.** (a) The operation, erection or transportation of any tools, machinery, or equipment, or any part thereof capable of vertical, lateral or swinging motion, the handling, transportation or storage of any supplies, materials or apparatus, or the moving of any house or other building, or any part thereof, under, over, by or near high-voltage lines, is hereby expressly prohibited, if at any time during such operation, transportation or other manipulation it is possible to bring such equipment, tools, materials, building, or any part thereof, within six feet (6') of such high-voltage lines, except where such high-voltage lines have been effectively guarded against danger from accidental contact, by either:
>     (1)    The erection of mechanical barriers to prevent physical contact with high-voltage conductors; or
>     (2)    De-energizing the high-voltage conductors and grounding where necessary.
>     (b)    Only in the case of either such exception may the six-foot (6') clearance required be reduced. The required six-

2

foot (6') clearance shall not be provided by movement of the conductors through strains impressed, by attachments or otherwise, upon the structures supporting the high-voltage line nor upon any equipment, fixtures or attachments thereon.

(c) If temporary relocation of the high-voltage conductors is necessary, appropriate arrangements shall be made with the owner or operator of the overhead line for such temporary relocation.

68-103-105. **Notification to power company and responsibility for safeguards.** When any operations are to be performed, tools or materials are to be handled, or equipment is to be moved or operated, within six feet (6') of any high-voltage line, the person or persons responsible for the work to be done shall promptly notify the operator of the high-voltage line of the work to be performed, and such person shall be responsible for the completion of the safety measures, which are required by §§ 68-103-102 and 68-103-103, before proceeding with any work which would impair the aforementioned clearance.

The contractor, Craig Coates, had contracted with Mr. and Mrs. Reece to build their new home on Blacky Bandy Road in Bethpage, Tennessee. Coates subcontracted the framing work to Terry Gregory who then employed Hauskins and others to do the framing. Prior to the initiation of this new construction on the property, the location of the electrical lines exceeded all vertical clearance requirements as set forth by the National Electrical Safety Code. The house was to be built in part under existing power lines, including an uninsulated 7200 volt line.

Coates contacted Tri County Staking Technician Keith Taylor to request that the lines be moved. At the time Coates and Taylor met at the site to discuss moving the power lines, some of the block work for the basement had been completed but framing work had not yet begun. Coates knew that work on the roof near the power lines would not be safe and so did subcontractor Terry Gregory.

Without notifying Tri County, framing and roofing work was undertaken, bringing subcontractor employees, including plaintiff Hauskins, into close proximity of the 7200 volt line. Hauskins was an experienced framing

carpenter, having worked in the construction business for over twenty years and was aware that the lines were dangerous. At the time of the accident, he was working in very close proximity to the 7200 volt line. He accidently came into contact with the line, received severe electrical shock and was thrown from the roof in such a manner as to fracture his thoracic spine resulting in paraplegia. The accident occurred May 14, 1995.

The trial in March of 1998 resulted in a finding by the jury that plaintiff Hauskins was 100% at fault and that Tri County had no fault.

Plaintiffs appeal, raising three issues:

1. Whether the trial court erred in allowing Tri County to introduce evidence of Coates Construction's acts or omissions when Coates could not be made a party due to the exclusive remedy provision of Tennessee Code Annotated section 50-6-108(a);

2. Whether such evidence and the resulting argument to the jury was in derogation of the rule set forth in the case of *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79 (Tenn. 1996);

3. Whether the trial erred in its charge to the jury regarding causation and liability.

After the accident Hauskins had settled with Lumberman's Mutual Casualty Company, workers' compensation carrier for Coates Construction Company. Lumberman's had intervened to assert its subrogation rights against Tri County but did not join in the appeal of the adverse judgment below. Tennessee Code Annotated section 50-6-108(a) provides:

> (a) The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or

death.

Appellant is correct in his assertion that a plaintiff's "right to recover on allegations of negligence ... is determined without reference to the employer's conduct." *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 84 (Tenn. 1996). In answering the question of whose conduct is the *proximate cause* of an accident, the actions of a plaintiff's employer may not be considered. However, it is also true that evidence of an employer's actions may be used to show that a plaintiff has not made out its cause of action, i.e., a failure to prove that a defendant's actions were *cause in fact* of plaintiff's injury. *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 (Tenn. 1997).

The law of this jurisdiction distinguishes between *proximate cause* and *cause in fact*. One's actions may be the *cause in fact* of an injury while not being the injury's *proximate cause*. On the other hand, one's actions cannot be a *proximate cause* of an accident without being a *cause in fact*. In the words of our supreme court:

> Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. Bradshaw, 854 S.W.2d at 869; McClenahan v. Cooley, 806 S.W.2d 767, 774 (Tenn.1991); Smith v. Gore, 728 S.W.2d 738, 749 (Tenn.1987). "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." King, Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences, 90 Yale L.J. 1353, 1355 n. 7 (1981). Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. McKellips v. Saint Francis Hosp., 741 P.2d 467 (Okl. 1987). "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.' " Id. at 470 (quoting Prosser and Keeton, The Law of Torts 266 (5th ed. 1984)).

*Kilpatrick v. Bryant,* 868 S.W.2d 594 (Tenn. 1993).

5

The elements of a negligence action are: (1) a legal duty, (2) breach of that duty which, (3) in fact causes, and (4) proximately causes (5) damages or injury to the plaintiff. No negligence claim can succeed in the absence of any of these elements. *See Perez v. McConkey,* 872 S.W.2d 897, 905 (Tenn. 1994); *See also Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993); *McClenahan v. Cooley,* 806 S.W.2d 767, 774 (Tenn.1991). A defendant in response to the proof of those elements may allege, as Tri County did, the possible intervening and superseding activity of an employer such as Coates Construction, which, though it cannot be a *proximate cause* of the injury, may so overbear the actions of the defendant as to negate *cause in fact*. This is the very situation addressed in *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252 (Tenn. 1997):

> There is no question that the Court in *Ridings* considered the "fairness" arguments advanced here by the defendants and made a policy decision to leave immune employers out of the assessment of fault. We thus decline the defendants' invitation to reverse *Ridings* or otherwise depart from the rule adopted in that decision.

> However, before leaving *Ridings*, we are inclined to add that our decision in that case can best be understood when considered in the analytical context in which the case came to the Court. The defendants in *Ridings*, like the defendants here, wanted the jury to assess fault against the employer by arguing that the employer's actions were the proximate, or legal, cause of the plaintiff's injuries. Of course, the employer cannot be found to be the proximate, or legal, cause of the plaintiff's injuries because the employer is immune from tort liability under Tenn.Code Ann. § 50-6-108(a). By enacting Tenn.Code Ann. § 50-6-108(a), the legislature has already determined that for policy reasons the employer may not be the legal cause of the plaintiff's injuries.

> This is not to say, however, that the employer cannot be found by the trier of fact to have been a cause in fact of the plaintiff's injuries. If the rule were otherwise, the defendants would effectively be precluded from presenting a defense. A defense that the product was not defective or unreasonably dangerous when it left the defendants' control would not be credible unless the defendants were permitted to introduce evidence as to what actually happened to the product leading up to the incident that injured the plaintiff. Excising the employer from that discussion would be tantamount to drawing a line which would make discussion of the case to

be tried difficult, if not impossible. The end result would be that the jury would not hear evidence of the true facts surrounding the product that caused the plaintiff's injuries but, nonetheless, be asked to determine fault and hence liability for damages. Prohibiting the introduction of such evidence could result in a defendant, who was not a cause in fact of the plaintiff's injuries, being required to pay for the harm anyway.

*Snyder*, 955 S.W.2d at 256.

In *Snyder* a manufacturer attempted to raise in its defense in federal court the action of an immune employer to prove, *inter alia,* that the product it manufactured was not unreasonably dangerous and only became so upon subsequent alteration. *Snyder*, 955 S.W.2d at 255. On certification from the federal District Court, the Tennessee Supreme Court held that the actions of that employer worked not to implicate the employer under comparative fault, but to show a break in the causal chain from manufacture to dangerous condition to injury. *See generally* Tenn. Code Ann. § 29-28-108.

In the case at bar, the defendant was alleged to have violated statutes and the provisions of the National Electric Safety Code with regard to the operation and maintenance of power lines at safe distances.

Attendant to those allegations supporting the legal duty of Tri County and its concomitant liability for breach of that duty was the major question of whether any actions or omissions on the part of Tri County *actually caused* Mr. Hauskins injury. This question of *cause in fact* must be separated from the question of *proximate cause.* The charge to the jury must articulate the difference. We find that the trial court properly disposed of any possible confusion. The trial court charged the jury:

> The point that I want to state to you, that I think is important, is that you, as a jury, may consider only the evidence that's relevant to the events leading up to the incident that injured Mr. Hauskins. Tri County may not ask the jury to assign fault to the employer of Mr. Hauskins. Tri County may not take the legal position that Mr. Hauskins's employer's actions were the legal cause of Mr. Hauskins's injuries. You may consider the actions of the employer only in assessing whether Mr. Hauskins has met his burden of

7

establishing the elements necessary to recover against Tri County. You shall not assess -- I'm sorry. You shall not -- I'm going to say it anyway -- assess fault against Mr. Hauskins's employer. The employer's legal responsibility, if any, will be determined under the Workman's Compensation Act.

The statutory duties under Tennessee Code Annotated section 68-103-102, 103 and 105 rested upon Mr. Hauskins' employer. Under the proof the jury could find that the accident would not have happened "but for" the failure of the employer to notify Tri County that framing construction on the house had started, thereby triggering the duty of Tri County to move the lines or cut off the power. This goes to the jury as negating "cause in fact" of the alleged negligence of the defendant, an issue on which plaintiffs bear the burden of proof.

Concerning Appellant Hauskins' third issue, this Court will not view individual charges in a vacuum. We consider the jury charge in its entirety, and uphold it as long as it fairly defines the issues and does not mislead the jury. *See e.g. Memphis St. Rwy. v. Wilson*, 108 Tenn. 618, 620, 69 S.W. 265, 265 (1901); *Abbot v. American Honda Motor Co.,* 682 S.W.2d 206 206, 209 (Tenn. Ct. App. 1984). See also *Smith v. Parker,* 213 Tenn. 147, 156, 373 S.W.2d 205, 209 (1963).

We find in viewing the jury charge as a whole that the issues were properly placed before the fact finders, and that the jurors were not misled. The evidence was properly limited and the jury properly instructed. The verdict returned found Mr. Hauskins 100% at fault.

It is the time honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be

8

any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury.

*Crabtree Masonry Co. v. C & R Const., Inc.,* 575 S.W.2d 4, 5 (Tenn. 1978).

As a result, for the reasons and under the authorities cited herein, the judgment of the trial court is affirmed, and the case is remanded for further proceedings as needed.  Costs on appeal are taxed against appellant.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
PATRICIA J. COTTRELL, JUDGE