**Dr. Homer D. HARDY, Jr., individually, and as surviving spouse of Phyllis Joan Love Hardy, Deceased, Plaintiff,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.**

No. 83024.

Supreme Court of Oklahoma.

Jan. 16, 1996.

Jones, Givens, Gotcher & Bogan, James E. Weger, Robert R. Peters, II, Tulsa, for Plaintiff.

Doerner, Stuart, Saunders, Daniel, Anderson & Biolchini, G. Michael Lewis, L. Dru McQueen, Tulsa, for Defendant.

SIMMS, Justice.

The United States District Court for the Northern District of Oklahoma has certified the following question of law to this Court pursuant to the Uniform Certification of Law Act, 20 O.S.1991, § 1602:

Does the lost chance of survival doctrine set out in *McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467 (Okla.1987), and restricted therein to certain limited types of medical malpractice actions, apply in an ordinary negligence case that is not brought against a medical practitioner or hospital?

Our answer is that an action for loss of chance of survival may not be expanded to

apply in an ordinary negligence action brought against one other than a medical practitioner or a hospital.

In light of the outcome of our decision answering this certified question, we find it unnecessary to consider issues regarding the limitation of Southwestern Bell's liability by reason of tariffs on file with the Oklahoma Corporation Commission.

Plaintiff, Dr. Homer Hardy, brought this action for wrongful death against Southwestern Bell Telephone Company alleging that its negligence caused a failure of the 911 emergency system which resulted in his wife's death from a heart attack she suffered in their Tulsa home the morning of July 18, 1992, because plaintiff was unable to promptly summon emergency assistance and an ambulance for her.

Ruling on the parties' motions for summary judgment, the trial court held that plaintiff could not establish defendant's action as the cause in fact of his injury; that plaintiff failed to make the necessary causal connection between the delay caused by the system failure and the decedent's death which is required by controlling authority.

Finding that plaintiff could not meet his burden of proof of causation in a traditional negligence action, the trial judge determined the question of the applicability of *McKellips*, with its reduced standard of causation, would be appropriate to certify to this Court, even though *McKellips* explicitly limits application of the doctrine to the area of medical malpractice and rejects the idea of expanding past that boundary to ordinary negligence actions.

In its order of certification the trial court set forth the following facts as relevant to the question certified and showing the nature of the controversy in which the question arose.

"Mrs. Hardy ("Deceased") suffered a heart attack in her home on July 18, 1992 and died at Hillcrest Medical Center later that same day. From the time the Deceased suffered her heart attack to the time EMSA arrived at Mrs. Hardy's home, the Decedent's husband ("Plaintiff") administered Cardiovascular Pulmonary Resuscitation ("CPR") on his wife and attempted to summon EMSA using the Emergency 911 System ("911 System") of Defendant Southwestern Bell Company ("SWB"). Plaintiff was unable to reach EMSA. After repeated attempts to summon EMSA using the 911 system, Plaintiff dialed the operator, who called the Fire Department and ambulance. Plaintiff alleges his unsuccessful attempts to summon EMSA was due to a "system lock-up" resulting from SWB's decision, despite its knowledge of previous incidents in other areas of the country where the telephone system overloaded during similar types of concert ticket sales, to allow the sale of Garth Brooks concert tickets by phone. Plaintiff contends the overload of the telephone system was the proximate cause of his wife's death. In response, Defendant claims decedent's death was proximately caused by her heart attack."

In deciding *McKellips* the Court joined with a growing number of jurisdictions which have recently adopted the "loss of chance" doctrine in medical malpractice actions. While the decisions have some differences in their approaches, the essence of the action is that medical providers are liable for negligent treatment which decreased a patient's chance of survival for a better outcome even though the adverse result probably would have occurred anyway. In the typical loss of chance case the plaintiff is already suffering from a threatening condition or is subject to some existing risk, unlike a healthy plaintiff in most injury actions. The plaintiff claims that the tortfeasor has negligently breached the very duty imposed to prevent the harm suffered. The negligence increases the risk of harm by aggravating the effect of the pre-existing condition or risk and/or taking away whatever chance for recovery existed before the negligence.

In *McKellips*, for instance, plaintiff brought a wrongful death action against the hospital and physician for negligent care of the decedent who was brought to the hospital suffering chest pain. Decedent was diagnosed as having gastritis and released but died of cardiac arrest approximately five hours later. Evidence established that decedent had a less than even chance for recov-

ery or survival even with non-negligent care. In the case at bar, plaintiff states that he does not know if his wife would have survived if the ambulance could have been summoned and had arrived in its normal response time, but that the delay caused a loss of his wife's chance to survive the heart attack.

▬ As the Court explained in *McKellips,* under traditional principles of causation in negligence actions, plaintiff must present evidence that it is "more likely than not" that the harm suffered was caused by defendant's negligence. While absolute certainty is not required, mere possibility of causation is insufficient. When the matter is one of pure speculation or conjecture or the probabilities evenly balanced, it is the duty of the court to direct a verdict for defendant because a party will not be permitted to recover from another whose acts, however wrongful, are not the proximate cause of the injury suffered. Recovery is barred therefore where defendant's treatment or diagnosis, even if clearly negligent, deprives a patient of only 50% or less chance of avoiding harm. In the typical loss of chance case, pre-existing illness or injuries have already lowered the patient's chance of avoiding the ultimate harm. The patient already has a disease or condition from which death or impairment would more than likely result so that even if defendant's negligence will deprive the patient of all existing chance to avoid the harm, traditional causation principles will totally bar recovery. Id., at 470–471.

In *McKellips* the Court discussed the various theories upon which loss of chance malpractice cases have been adopted to ameliorate this perceived harsh result of the all-or-nothing traditional causation standard. Some courts have relaxed the degree of certainty necessary for the submission of the issue of proximate cause from the reasonable probability standard to a substantial factor test. In those cases, the ultimate harm, rather than the lost chance itself is the focus so that full damages are awarded in the same manner as if plaintiff had established "but for" causation for the original harm.

Relying on the Second Restatement of Torts, § 323(a) some States impose liability on a showing that defendant's negligence was a substantial factor in increasing plaintiff's risk of harm or reducing plaintiff's chances of obtaining a better result. Some jurisdictions view the lost chance itself as the injury, treating it as a separate, distinct cause of action. The plaintiff does not recover for the value of the serious medical condition or death, only for the lost chance of recovery. Issues of the standard of causation are not involved because the focus of the proximate cause inquiry is limited to whether it is more likely than not that defendant's malpractice decreased a chance of survival. Id., at 471–473.

After considering the several variations of analysis of the doctrine, the *McKellips* court adopted what has been referred to as a "hybrid" approach, applying a relaxed standard of causation but limiting damages to the value of the lost chance. The court adopted the increased risk analysis of § 323, allowing a plaintiff to go the jury not only with evidence of increased risk, but also with evidence of substantial decrease in chances for survival. Id., at 475–477. See *Kramer v. Lewisville Memorial Hospital,* 858 S.W.2d 397 (Tex. 1993).

As recognized by the trial court in the instant case, the *McKellips* court announced it was specifically limiting the application of the loss of chance doctrine adopted that day to:

"a limited type of medical malpractice case where the duty breached was one imposed to prevent the type of harm which a patient ultimately sustains and because of the inherent nature of such a case a plaintiff is unable to produce evidence of causation sufficient to meet the traditional rule of causation. We note that our decision today does not change the traditional principles of causation in the ordinary negligence case and this new rule applies only in those limited situations as presented here." At 474–475.

In its conclusion, the court stated:

"In summary, we hold in medical malpractice cases involving the loss of a less than even chance of recovery or survival where the plaintiff shows that the defendant's conduct caused a substantial reduction of the patient's chance of recovery or surviv-

al, irrespective of statistical evidence, the question of proximate cause is for the jury. We further hold if a jury determines the defendant's negligence is the proximate cause of the patient's injury, the defendant is liable for only those damages proximately caused by his negligence which aggravated a pre-existing condition. Consequently, a total recovery for all damages attributable to death are not allowed and damages should be limited in accordance with the prescribed method of valuation." At 477.

The public policy considerations which are reflected in the judicial decisions creating this remarkable exception to the traditional rule of the standard of proof of causation focus on the special relationship of the physician and patient and the expression of apprehension that failure to adopt the loss of chance doctrine in medical malpractice suits would place patients with pre-existing conditions in peril.

In *Aasheim v. Humberger*, 215 Mont. 127, 695 P.2d 824, 828 (1985), the Supreme Court of Montana determined that a patient was entitled to a loss of chance instruction where her physician's failure to order diagnostic x-rays resulted in failure to properly diagnose cancer and patient's loss of chance to preserve her knee. The court explained:

"We feel that including 'loss of chance' within causality recognizes the realities inherent in medical negligence litigation. People who seek medical treatment are diseased or injured. Failure to diagnose or properly treat denies the opportunity to recover. Including this lost opportunity within the causality embrace gives recognition to a real loss consequence of medical failure."

Addressing these policy concerns in *McKellips,* the Court pointed out that a health care professional who has deprived a patient of a significant chance for recovery through negligence should not be able to rely on the inevitability of the patient's condition inasmuch as defendant put the chance for improvement "beyond the possibility of realization". We recognized that "health care providers should not be given the benefit of the uncertainty created by their own negli-

gent conduct. To hold otherwise would in effect allow care providers to evade liability for their negligent actions or inactions to situations in which patients would not necessarily have survived or recovered, but still would have a significant chance of survival or recovery." At 474.

We also discussed there the subversion of the deterrence function of tort law which would occur if recovery is denied for statistically irrefutable loss suffered by reason of conduct which breaches the duty imposed to prevent the very type of harm the plaintiff ultimately sustains. We set forth the observation of the Supreme Court of Kansas in *Roberson v. Counselman*, 235 Kan. 1006, 686 P.2d 149 (1984), criticizing the "all or nothing" requirement of traditional causation in medical malpractice cases, stating:

"There are sound reasons of public policy involved in reaching this result. The reasoning of the district court herein (which is similar to the extreme position taken in *Cooper v. Sisters,* 27 Ohio St.2d 242, 272 N.E.2d 97), in essence, declares open season on critically ill or injured persons as care providers would be free of liability for even the grossest malpractice if the patient had only a fifty-fifty chance of surviving the disease or injury even with proper treatment. Under such rationale a segment of society often least able to exercise independent judgment would be at the mercy of those professionals on whom it must rely for life-saving health care."

In *Falcon v. Memorial Hospital,* 436 Mich. 443, 462 N.W.2d 44 (1990), the Supreme Court of Michigan recognized that a patient's loss of a 37.5% opportunity of living because of a physician's negligent failure to act could form the basis of a medical malpractice action. The court spoke of the expectations of patients about their physicians and noted that "a patient goes to a physician precisely to improve his opportunities of avoiding, ameliorating or reducing physical harm and pain and suffering ... that is why [patients] go to physicians. That is what physicians undertake to do. That is what they are paid for. They are, and should be, subject to liability if they fail to measure up to the standard of care." 462 N.W.2d at 52. The

court concluded that injury which results from medical malpractice includes not only physical harm, but the loss of opportunity of avoiding physical harm so that a physician who deprives a patient of a 37.5% chance of surviving which she would have had if the physician had not failed to act, is subject to a loss of chance of survival action.

The public policy concerns of medical practice which have been held to justify a reduced burden of causation in lost chance cases do not transfer over to ordinary negligence cases. Public policy is not served by extending the causation exception to the "but for" rule to other tortfeasors. Under the decisions discussed and other "loss of chance" medical provider opinions, the physician had the opportunity to perform properly under the terms of the physician-patient special relationship but was alleged to have failed to do so.

The essence of the doctrine is the special relationship of the physician and the patient. In these cases the duty is clear, the negligence is unquestioned and the resulting harm, the destruction of a chance for a better outcome, has obvious value and is not so speculative as to be beyond being reasonably considered a result of defendant's negligence.

In *Daugert v. Pappas,* 104 Wash.2d 254, 704 P.2d 600 (1985), the Supreme Court of Washington rejected an attempt to apply principles of loss of chance to an action for legal malpractice based on failure to file an appeal. The court found that while the loss of chance to recover from misdiagnosis of cancer such as was present in *Herskovits v. Group Health Coop of Puget Sound,* 99 Wash.2d 609, 664 P.2d 474 (1983), resulted in a very real injury with definite value which would require compensation, there is no commensurate harm, no lost chance, in a legal malpractice case as the matter may eventually be reviewed. Neither, held the court, is there in a legal malpractice action a separate and distinguishable harm, a diminished chance.

Plaintiff presents no convincing arguments regarding application of the loss of chance doctrine to this situation. In *Coker v. Southwestern Bell Telephone Co.,* 580 P.2d 151 (Okl.1978), we held that plaintiff did not state a cause of action against the telephone company for damages sustained when fire destroyed his place of business with the theory that the defective telephone prevented him from summoning emergency assistance to extinguish the fire. We held that the petition did not assert the requisite causal connection between alleged negligence of the defendant and the resulting damages. We observed that it would be "necessary to heap conclusion upon conclusion as to the course events would have taken had the telephone operated properly" in order to establish the causal connection between the defective telephone and the ultimate destruction of appellant's business. Addressing the issue of causation we found the failure of phone service was too remote from plaintiff's loss to establish grounds for recovery and stated "that the number and character of the random elements which must come together in precisely the correct sequence at exactly the right time in order for it to be established that failure of telephone service was an efficient cause of appellant's loss so far removes appellee's act of negligence from the ultimate consequences as to break any asserted causal connection." Id., at 154.

We relied in large part on a Washington decision, *Foss v. Pacific Telephone and Telegraph Co.,* 26 Wash.2d 92, 173 P.2d 144, 149 (1946), which we noted had ruled on facts virtually identical to *Coker.* In *Foss* the Supreme Court of Washington had collected and analyzed many decisions addressing the very points we considered regarding causation and we set forth the following instructive discussion of causation from that decision:

"Appellant's claim of causation rests on pure speculation. Surely we could not hold that anyone could ever say that if respondent's operator had promptly answered appellant's call and made connection of his telephone with the fire department in Kent that the fire department would have immediately answered the telephone; would have promptly left the house where the fire department equipment is kept; would have proceeded rapidly to the scene of the fire without mishap; would have quickly arranged its equipment to

fight the fire with only minor damage to the building."

The trier of fact in the instant case would likewise be forced to heap conclusion upon conclusion as to the course events would have taken if the 911 system had worked properly and have no more than mere conjecture as to what damages plaintiff suffered by reason of defendant's action. Plaintiff's claim of causation is far too speculative and too remote to be sustained here. Plaintiff presents us with no convincing argument as to why a loss of chance relaxed standard of causation limited by the Court to medical malpractice actions should be applied here to reduce his burden.

We would be remiss in our duty if we failed to observe here that the application of the lost chance of survival doctrine to these facts as urged by plaintiff would cause a fundamental redefinition of the meaning of causation in tort law. While the majority of the Court were persuaded in *McKellips* that the particular facts and circumstances of that case required creating an exception to the "more likely than not" requirement of traditional causation, we refuse to effect a total restructuring of tort law by applying the lost chance doctrine beyond the established boundary of medical malpractice to ordinary negligence actions.

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER, HARGRAVE, OPALA, SUMMERS and WATT, JJ., concur.

HODGES, J., disqualified.