**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TRAVELERS INDEMNITY
COMPANY, as subrogee of
Commercial Brick Corporation,

        Plaintiff-Appellant,

v.

HANS LINGL ANLAGENBAU UND
VERFAHRENSTECHNIK GMBH &
CO. KG; THE NORTH AMERICAN
MANUFACTURING COMPANY,
LTD.; ENCERTEC, INC.,

        Defendants-Appellees.

Nos. 04-7062 & 04-7128
(D.C. No. 03-CV-389-W)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

these consolidated appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

The cases are therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This lawsuit arises from a kiln explosion that occurred in Wewoka, Oklahoma on December 28, 2000. Commercial Brick Corporation (CBC) owned and operated the commercial kiln, known as Kiln B, to make bricks. Plaintiff Travelers Indemnity Co. (Travelers), CBC's insurance carrier, paid over $4 million on CBC's claim for property damage and business interruption losses. The defendants provided various components to the structure and operation of Kiln B. Claiming those components were defective and caused the explosion, Travelers, as subrogee of CBC, sued defendants to recover the insurance pay-out. The district court granted summary judgment to defendants. In a later order, the district court ordered Travelers to pay defendants' attorney fees. Travelers appeals both judgments, which we have consolidated for disposition.

## I. Background

Kiln B is a brick making facility. It was constructed in 1981 by defendant Hans Lingl Anlagenbau Und Verfahrenstechnik GMBH & Co. KG (Lingl KG), and upgraded in 1997–1998, using components provided and installed by defendants North American Manufacturing Co., Ltd. (NAMCO) and Encertec, Inc. One of the upgraded components, made by NAMCO, was a set of preheat burners equipped with a Flame Supervision System (FSS). The purpose of the FSS was to stop the flow of natural gas to the preheat burners when a flame was not detected.

After its installation, the FSS repeatedly malfunctioned, causing the burners to shut down even in the presence of a flame. Consequently, CBC's foreman, Leonard Dooley, wired around the FSS, effectively disabling it, so the burners would continue to operate and CBC would not suffer a loss of brick production.

A power outage caused the kiln to shut down on December 26, 2000. On December 28, CBC employees started the kiln without incident. The explosion happened during a second start-up procedure necessitated by the failure of a pressure blower after the first start-up. Foreman Dooley told a fireman to shut off the gas valves going to the preheat burners, but the fireman failed to do so, and Dooley did not check. Dooley also did not check the vestibule door or the kiln door. Therefore, unbeknownst to the CBC employees, gas flowed into the kiln via the preheat burner valves for five to seven minutes before the ignition switch was thrown, causing the explosion.

After paying CBC on its insurance policy, Travelers filed suit in CBC's shoes, alleging various theories of recovery. During the discovery phase, Travelers designated Philip Ambrose as its corporate deponent, pursuant to Fed. R. Civ. P. 30(b)(6). Mr. Ambrose declined to answer deposition questions about the factual bases for Travelers' claims, following the advice of counsel. Travelers maintained that the information sought was protected by the attorney-client privilege and the work-product doctrine. During the deposition, the parties telephoned the district judge, who declined to grant defendants' motion to compel

because it would be futile to order a witness to answer questions to which he said he did not know the answer. The district judge warned Travelers, however, that if it continued to deny knowledge and refuse to reveal information, it could not later claim knowledge in any summary-judgment proceedings. In his later order granting summary judgment to defendants, the judge characterized Ambrose's deposition testimony as "effectively [giving] no answer, [which stood] as plaintiff's evidentiary presentation." Aplt. App. Vol. 8, at 1734. Accordingly, the district judge granted summary judgment to defendants, holding that Travelers was precluded from presenting evidence in addition to or contrary to the evidence it produced at the Rule 30(b)(6) deposition, which was inadequate to resist summary judgment.

The district court also issued an alternative ruling in granting summary judgment to defendants. After considering Travelers' expert reports, the district court concluded that Travelers' failed to prove causation for purposes of summary judgment. The court also rejected Travelers' agency theory against defendant Lingl KG because it was raised too late in the proceedings. Finally, the court awarded attorney fees in full to all defendants as prevailing parties.

Travelers appeals the district court's grant of summary judgment based on its trial tactics. It also appeals the summary judgment entered on the merits based on products liability against all defendants, and breach of warranties against NAMCO only. Travelers contends that the following four components of the

1997-1998 upgrade were defective and caused the explosion: the purge system,[1] explosion relief,[2] the FSS and preheat burners, and lack of written warnings and instructions. Travelers has abandoned on appeal all other claims, including those for negligence and breach of contract.

## II. Discussion

### A. Travelers' Litigation Tactics

Before turning to the merits, we address the district court's grant of summary judgment based on Travelers' obdurate litigation tactics. In directing its corporate representative not to answer numerous relevant questions germane to its complaint, Travelers' counsel invoked the attorney-client privilege and work-product doctrine. Most of these objections were entirely baseless; the objectionable questions merely sought routine factual support for the allegations underlying the complaint.

Even though we do not affirm on this ground, we express our strong disapproval of Travelers' deposition tactics. Travelers would have had difficulty

---

[1] "A properly designed timed purge system will ensure that there will be no accumulation of gas in the kiln at the time the burners are ignited." Aplt. App. Vol. 4, at 853 (report by Raymond Ostrowski, expert witness endorsed by Travelers).

[2] "Explosion relief is simply a wall section or panel fitted to the furnace and designed such that the material has less resistance to an explosion than the furnace itself. The relief components are designed to fail, vent the explosion and minimize the damage and destructive effects to the kiln." Aplt. App. Vol. 2, at 403 (report by William M. Norman, consulting engineer engaged by Travelers).

demonstrating an abuse of discretion in the district court's discovery rulings, particularly since Travelers did not follow the preferred course of action and seek a pre-deposition order on its unusual work-product position. *See Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 952-53 (10th Cir. 2004) (reviewing district court's discovery rulings for abuse of discretion); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266-67 (10th Cir. 1995) (chastising counsel for not seeking pre-deposition order, despite his pre-deposition belief that the work-product doctrine might foreclose certain lines of questioning).

*B.  Summary Judgment*

*1.  Legal Standards*

In this diversity action we apply Oklahoma substantive law. *See Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment. *Lanman v. Johnson County*, 393 F.3d 1151, 1154-55 (10th Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## 2. *Products Liability Claims Against NAMCO and Encertec*

Travelers contends that Kiln B was defective after the upgrade. As noted above, it maintains the following defects caused the explosion: the FSS and preheat burners, the lack of a purge system, and the lack of an explosion relief system. Travelers further claims that the component products were defective due to the lack of written warnings and instructions.

As an initial matter, although the briefs are unclear on this point, Travelers has not established that any defendant contracted to provide either a purge system or an explosion relief system as part of the upgrade. Instead, Travelers argues that the safety standards promulgated by the National Fire Protection Association (NFPA) imposed an affirmative duty on defendants to undertake to install these systems in Kiln B, even though CBC did not specifically request such an overhaul of the kiln or contract to pay for them.[3] Travelers has cited no authority for its position that the NFPA standards place any duty on NAMCO or Encertec, and under the circumstances of this case, we decline to entertain this argument. *See Simpson v. T.D. Williamson Inc.*, 414 F.3d 1203, 1206 n.4 (10th Cir. 2005) (declining to address claims unless supported by legal authority or by argument that position is sound despite lack of authority); *cf. Fellers v. St. Louis-San Francisco Ry. Co.*, 572 P.2d 972, 977 (Okla. 1977) (Simms, J., dissenting) (noting

---

[3] As noted, Travelers has abandoned its claims for breach of contract and negligence.

that industry standards, "[w]hile not carrying the force of law, . . . are recognized as relevant and material on the issue of negligence"). Therefore, we will consider only Travelers' arguments based on the FSS and preheat burners, as well as the lack of written warnings and instructions.

Under Oklahoma law, a products-liability plaintiff must prove that the defective product was the cause of the injury. *Prince v. B.F. Ascher Co.,* 90 P.3d 1020, 1026 (Okla. Civ. App. 2004); *accord Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974). "If some act of the plaintiff *caused* the injury, rather than the defective product itself, causation is missing, and the plaintiff may not recover." *Kirkland*, 521 P.2d at 1366.

Oklahoma law defines a proximate cause "as one that, 'in the natural and continuous sequence, produces [the plaintiff's] injury and without which the injury would not have happened.'" *Woolard v. JLG Indus., Inc.*, 210 F.3d 1158, 1172 (10th Cir. 2000) (quoting *Dirickson v. Mings*, 910 P.2d 1015, 1018–19 (Okla. 1996)) (further quotation omitted). An asserted causal connection may be rejected if a factfinder must "heap conclusion upon conclusion as to the course events would have taken . . . in order to establish the causal connection between the defective [product] and the ultimate [damage]." *Hardy v. Sw. Bell Tel. Co.*, 910 P.2d 1024, 1029 (Okla. 1996) (quotation omitted).

Travelers submitted reports of two experts, both of whom opined that the explosion could have been avoided or the damages minimized if Kiln B operated

with an effective purge system and explosion relief system. Neither expert said the condition of the FSS or the preheat burners caused or contributed to the explosion. Furthermore, Traveler's initial investigator stated that "[t]he explosion was caused by employees failing to insure that the gas valves to the preheat burners had been shut off prior to igniting the preheat burners." Aplt. App. Vol. 3, at 570. That was also the opinion held by Foreman Dooley and CBC's president. *Id.* Vol. 1, at 132; Vol. 6, at 1219.

Travelers first argues that the fact of CBC employees' negligence as a contributing cause of the explosion does not defeat its products-liability claim because contributory negligence is irrelevant to the claim. *See Hogue v. A.B. Chance Co.*, 592 P.2d 973, 975 (Okla. 1978) (holding contributory negligence not relevant to products liability action absent showing that plaintiff knew of danger). However, this argument misses the mark because liability may only be imposed on defendants if plaintiffs first prove that defendants' product caused the harm.

It is undisputed that the FSS was not in use and that the preheat burners "lit and ran fine." Aplt. App. Vol. 1, at 160. Consequently, Travelers rests its legal theory on the following logic: if the FSS had worked properly it would not have been disabled and would have turned off the gas flow to the preheat burners, which, in turn, would have prevented the kiln from igniting, thus preventing the explosion.

This theory does not withstand scrutiny. It attempts to impose liability on a manufacturer not because the product did not function as designed, but because it had been disabled by the user. Travelers confuses CBC's failure to maintain the FSS system with a failure of the system to operate properly. Under this logic, however, one could just as easily presume that if the FSS had not been disabled, it would have prevented the explosion. Or, conversely, one could also easily presume that if the FSS had been repaired, the explosion also would have been avoided. But to assume that a worker's zeal to ignite the kiln and subsequent dismantling of the FSS that might have prevented the explosion, is no basis to show that the FSS proximately caused the accident. In short, for Travelers to prevail under its theory of causation, a factfinder would be required impermissibly to "heap conclusion upon conclusion as to the course events would have taken" in order to find that defendants' products caused the explosion. *See* *Hardy*, 910 P.2d at 1029. Accordingly, we affirm the district court's determination that a reasonable factfinder could not conclude that the disabled FSS proximately caused CBC's injuries under a theory of strict product liability.[4]

Travelers also argues that defendants' products were defective because they did not come with written warnings and safety labeling. It contends that it is entitled to the rebuttable presumption that CBC employees would have read and

---

[4] In so holding, we need not address the district court's alternative rulings on supervening cause, assumption of the risk, and misuse of the product.

-10-

heeded an adequate warning. *See Black v. M & W Gear Co.*, 269 F.3d 1220, 1231-32 (10th Cir. 2001) (applying Oklahoma law). The presumption can be rebutted with evidence that the plaintiff would not have followed the warning. *Id.* at 1232. In addition, Oklahoma law provides that "[w]here the danger or potentiality of danger is known or should be known to the user, the duty to warn does not attach." *Prince*, 90 P.3d at 1027. Furthermore, there is no duty to warn a knowledgeable user of the dangers of a product, and there is no duty to warn of an obvious danger. *Duane v. Okla. Gas & Elec. Co.*, 833 P.2d 284, 286 (Okla. 1992). "The plaintiff must establish that the failure to warn was a proximate, producing cause of the injuries received." *Id.*

We agree with the district court that this claim also fails as a matter of law. Foreman Dooley testified that he knew it was unsafe to operate the kiln with the FSS disabled. Moreover, it is undisputed that CBC operated the kiln from 1981, when it was first constructed, until the 2000 explosion, fully aware of the kiln's safety features, including the FSS. We agree with the district court that CBC was a knowledgeable user who could be expected to, and did, appreciate the danger of disabling the FSS. Accordingly, there was no duty to warn.

*3. Breach of Warranty Claims Against NAMCO*

To prevail on its claims for breach of warranty, Travelers must demonstrate that the breach "was the proximate cause of the loss sustained," in addition to showing the existence of a warranty and a breach of it. *Am. Fertilizer Specialists,*

-11-

*Inc. v. Wood*, 635 P.2d 592, 595 & n.10 (Okla. 1981). Our conclusion that Travelers' evidence of causation is insufficient to resist summary judgment as to its products-liability claims also defeats its breach-of-warranty claims against NAMCO.

        *4. Claims Against Lingl KG.*

Finally, Travelers' claims against Lingl KG are without merit. Travelers' theory of liability against Lingl KG was that Encertec was Lingl KG's agent. The district court ruled that this agency theory was raised too late in the proceedings. We need not review this ruling, however, because we have concluded that Encertec is not liable to Travelers. Consequently, even if Encertec were Lingl KG's agent, no liability would attach to Lingl KG. *See, e.g., Sisk v. J.B. Hunt Transport, Inc.*, 81 P.3d 55, 60 & n.21 (Okla. 2003) (stating where agent not liable, principal also not liable).

## C. Attorney Fees

Travelers contends that the district court erred in awarding attorney fees to defendants not authorized under Oklahoma law. In particular, it argues that Oklahoma law does not allow the award of fees in successfully defending products liability claims, although it acknowledges that prevailing-party attorney fees were authorized on the claims for breach of warranty and negligent or willful injury to property. *See* Okla. Stat. tit. 12, §§ 936, 939 & 940. As a result, Travelers contends the district court should have apportioned fees among the

-12-

various theories of liability, thereby reducing the overall amount of the award. Defendants do not claim that Oklahoma law permits an attorney fee award for a products-liability claim; rather, defendants maintain that their defense to all of the various theories of recovery was the same. Therefore, defendants claim apportionment was not required.

Generally, an award of attorney fees is reviewed for an abuse of discretion. *Browder v. City of Moab*, 427 F.3d 717, 719 (10th Cir. 2005). "[W]e review *de novo* whether the district court applied the correct legal standard, and we review its findings of fact for clear error." *Id.*

The Oklahoma Supreme Court has held that attorney fees must be apportioned between claims for which there is statutory authority for an award of attorney fees and those for which there is not. *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1098 (Okla. 1996); *Sisney v. Smalley*, 690 P.2d 1048, 1051-52 (Okla. 1984). But where non-authorized claims contain common components of a claim for which attorney fees are authorized, it may be proper to award fees without apportionment. *Green Bay Packaging*, 932 P.2d at 1098.

Here, defendants' opposition to the products-liability claims was the same as its defense to the other claims—the explosion was caused by CBC employees'

actions and not by any of the defendants' products or services.[5] Accordingly, it is apparent that the time defendants' attorneys devoted to the products-liability claims was necessarily incurred in defending the other claims, for which attorney fees are authorized. *See Transpower Constructors v. Grand River Dam Auth.*, 905 F.2d 1413, 1423 (10th Cir. 1990) (applying Oklahoma law to hold that prevailing party can recover fees for his attorney's work on claims not covered by fee-shifting statute where those fees were necessarily incurred on claims for which attorney fees were authorized). Therefore, we hold that the district court did not err in refusing to apportion the attorney fee award, and we affirm the award.

The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[5] As Travelers points out, defendants did not argue that the products were not unreasonably dangerous, a theory limited to the products-liability claim. If defendants had, the attorney fees generated for such a defense arguably should have been deducted.