**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

COREY FREY,[*]

      Plaintiff–Appellant,

v.

AT&T MOBILITY, LLC, f/k/a Cingular
Wireless; AT&T CORPORATION, a
foreign corporation,

      Defendants–Appellees.

No. 09-5072
(D.C. No. 4:07-CV-00468-TCK-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT[**]**

Before **KELLY**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

Corey Frey appeals the district court's dismissal of his diversity action.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] The original plaintiff, Ernest Frey, is deceased. We grant appellant's Fed. R. App. P. 43(a) motion to substitute Corey Frey. Pursuant to Fed. R. Evid. 201(d), we take judicial notice of Corey Frey's Oregon residency. The parties remain completely diverse.

[**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

# I

Ernest Frey was the guardian of his eighty-two-year-old mother, Geraldine Frey.[1] Responding to Cingular Wireless[2] advertisements stating that "cell phones provide[] additional safety and security to users since they could call from almost any location to obtain help when needed," Ernest purchased a cell phone for his mother's use. He also purchased a Cingular service plan, holding the account in his name.

On July 26, 2005, Geraldine went missing. Ernest contacted Cingular the following day, explained the situation, and asked them to monitor the use of the cell phone. A Cingular employee informed Ernest that he could call back to see if the phone had been used, but advised that Cingular would not release information regarding the numbers that had been called from the phone or the cell tower locations for such calls unless Ernest obtained a subpoena. Cingular relayed the subpoena requirement to Tulsa police. The search for Geraldine continued throughout a large geographic area.

On August 3, 2005, a Cingular representative informed Ernest that the cell phone had been turned on and used on July 27. Although Ernest requested the location of the cell tower that had been used to route the call, Cingular refused, citing the lack of a

---

[1] In reciting the facts, we accept all well-pled factual allegations in the complaint as true and view these allegations in the light most favorable to plaintiff–appellant. See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

[2] Cingular Wireless is now AT&T Mobility, LLC. It is alleged that co-defendant AT&T Corporation possessed an ownership interest in Cingular when plaintiff's cause of action arose and, thus, is vicariously liable for Cingular's actions.

subpoena. The Oklahoma attorney general's office subpoenaed that information from Cingular on August 15, 2005. In early September, Cingular provided law enforcement with the relevant cell tower location and the last number Geraldine called. On October 15, 2005, Geraldine's body was discovered in a remote area.

Ernest filed suit in Oklahoma state court, claiming that Cingular's failure to provide cell tower information upon request resulted in the loss of the chance to rescue his mother. After defendants removed to federal district court, they moved to dismiss under Fed. R. Civ. P. 12(b)(6). The district court granted the motion with respect to the loss of chance claim.[3] A timely appeal was filed.

## II

We review de novo a district court's Rule 12(b)(6) dismissal. Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). To survive a motion to dismiss, the allegations contained in the complaint "must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (footnote omitted).

---

[3] Other claims were dismissed without prejudice by the consent of both parties and are not at issue in this appeal.

-3-

## A

To succeed in a negligence action brought under Oklahoma law, a plaintiff ordinarily must prove the defendant breached a duty of care and that breach proximately caused plaintiff's injury. Miller v. David Grace, Inc., 212 P.3d 1223, 1227 (Okla. 2009). In some cases, however, the causation requirement is relaxed such that a plaintiff need only demonstrate that the defendant's actions increased a risk of injury—in other words, that the defendant's actions deprived plaintiff of the chance to avoid injury. McKellips v. St. Francis Hosp., 741 P.2d 467, 471-74 (Okla. 1987). Oklahoma has partially adopted Restatement (Second) of Torts § 323 in these so-called "loss of chance" cases. See McKellips, 741 P.2d at 474. Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

A parallel Restatement provision, § 324A, addresses liability to a third party for the negligent performance of undertaken services.

Appellant contends that the district court erred by refusing to apply a relaxed causation standard. We disagree. The Oklahoma Supreme Court has determined that only medical malpractice claims qualify for the reduced causation standard entailed in a loss of chance action: "[A]n action for loss of chance of survival may not be expanded to apply in an ordinary negligence action brought against one other than a medical

-4-

practitioner or hospital." Hardy v. Sw. Bell Tel. Co., 910 P.2d 1024, 1025-26 (Okla. 1996); see also id. at 1028 (explaining that the reduced burden of proving causation is a "remarkable exception to the traditional rule").

We reject appellant's argument that this is not "an ordinary negligence action" because defendants were aware that their inaction placed an individual's life at risk. The Hardy court applied a relaxed causation requirement largely because of the "special relationship of the physician and patient." Id. Read in context, the phrase "an ordinary negligence action" plainly refers to negligence actions that are not premised upon medical malpractice. Because medical malpractice is not alleged here, the complaint fails to state a claim for loss of chance.

**B**

Appellant also takes issue with the district court's determination that Cingular had no duty to provide cell tower information under Restatement (Second) of Torts § 323 or § 324A. Oklahoma courts have found that §§ 323 and 324A impose a duty where the plaintiff and defendant have a relationship that inherently implicates safety and protection. See, e.g., Lay v. Dworman, 732 P.2d 455, 459-60 (Okla. 1986) (landlord has § 323 duty to minimize predictable security risks to his tenants); Truitt v. Diggs, 611 P.2d 633, 636-37 (Okla. 1980) (security company owes § 324A duty to parents when formulating recommendations regarding school security); Wiles v. Grace Petroleum Corp., 671 P.2d 682, 687 (Okla. Civ. App. 1983) (employer has § 324A duty to maintain worksite security).

As these cases make clear, the Restatement's negligent undertaking provisions impose a duty of care only when a defendant renders services that it "should recognize as necessary for the protection" of another. §§ 323, 324A. Provision of cell phone service is not such an undertaking, at least under appellant's theory of the case. Unlike the defendants in <u>Lay</u>, <u>Truitt</u>, and <u>Wiles</u>, Cingular's service is not closely related to security, nor did Cingular exercise control over Geraldine's physical environment—a type of control from which we could infer a general duty to protect. Appellant alleges that Cingular advertisements promised "additional safety and security" to customers because cell phone users can "call from almost any location to obtain help when needed." But this allegation cannot plausibly be read to imply that Cingular also undertook to provide for Geraldine's safety by assisting in locating her. <u>See</u> <u>Robbins</u>, 519 F.3d at 1247.

Nor did Cingular negligently undertake a rescue operation. <u>See</u> <u>Lowery v. Echostar Satellite Corp.</u>, 160 P.3d 959, 965-66 (Okla. 2007) (§ 323 liability not imposed under "good Samaritan" rule when defendant does not undertake rescue efforts). Cingular's decision to inform Ernest that his cell phone had been used after his mother went missing does not plausibly lead to the conclusion that Cingular agreed to help find Geraldine. <u>See</u> <u>Robbins</u>, 519 F.3d at 1247. The company affirmatively refused to help locate her and, thus, did not undertake a rescue. We agree with the district court that

Cingular had no duty under § 323 or 324A to release cell tower information to Ernest.[4]

## III

For the foregoing reasons, we **AFFIRM**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[4] Appellant does not argue that Cingular had a duty—independent of the loss of chance doctrine, § 323, or § 324A—to release cell tower information in a timely fashion after it received the subpoena.  Thus, we do not address whether breach of such a duty occurred.