ALENDRA NIANG            *       NO. 2019-CA-0425

VERSUS                  *

                               COURT OF APPEAL

DRYADES YMCA SCHOOL OF     *
COMMERCE, INC. AND XYZ          FOURTH CIRCUIT
INSURANCE CO.                  *

                               STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-10745, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Tiffany G. Chase**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Tiffany G. Chase)

**LOBRANO, J., CONCURS IN THE RESULT**

M. Suzanne Montero
Scott L. Sternberg
Michael Finkelstein
Natalie K. Mitchell
STERNBERG NACCARI & WHITE, LLC
935 Gravier Street, Suite 2020
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFF/APPELLANT

Sidney J. Angelle
Brant J. Cacamo
LOBMAN CARNAHAN BATT ANGELLE & NADER
400 Poydras Street
The Texaco Center, Suite 2300
New Orleans, LA 70130


      COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**DECEMBER 4, 2019**

Alendra Brown-Niang (hereinafter "Mrs. Niang") seeks review of the trial court's February 8, 2019 judgment granting the motion for partial summary judgment filed by Dryades YMCA School of Commerce, Inc. (hereinafter "YMCA"). After consideration of the record before this Court, and the applicable law, the trial court's dismissal of Mrs. Niang's claim for loss of chance of survival is affirmed.

## Facts and Procedural History

On March 2, 2017, Mouhamadou Moustapha Niang, Mrs. Niang's husband, (hereinafter "Mr. Niang") collapsed while playing basketball at the YMCA. Mrs. Niang, who is certified in cardiac life support, was present and requested an automated external defibrillator (hereinafter "AED") to start resuscitation attempts. YMCA staff informed Mrs. Niang that an AED machine was not available on the premises. Mr. Niang was subsequently transported to University Medical Center where he died on March 11, 2017 of anoxic encephalopathy secondary to sudden cardiac arrest.

1

On November 8, 2017, Mrs. Niang filed a petition for damages[1] against YMCA and its insurance company, asserting survival and wrongful death claims pursuant to La. C.C. art. 2315.1 and La. C.C. art. 2315.6. Mrs. Niang also asserted a loss of chance of survival claim, alleging that YMCA was negligent in failing to have an AED machine on the premises as required by La. R.S. 40:1137.3.[2]

On December 17, 2018, YMCA filed a motion for partial summary judgment arguing that Mrs. Niang's loss of chance of survival claim should be dismissed because that cause of action is not applicable in a non-medical malpractice case. In opposition to the motion for partial summary judgment, Mrs. Niang maintained that YMCA's motion was actually a peremptory exception of no cause of action, presented as a motion for summary judgment.[3] She asserted that she presented a valid cause of action and that YMCA's failure to have an AED machine on the premises, as required by La. R.S. 40:1137.3, resulted in the loss of a chance of survival for her husband. Mrs. Niang argued that the breach of the statutory duty imposed on YMCA created a cause of action by the person injured as a result of that breach. Thus, she maintains that she has stated a cause of action because she was alleging that the loss of chance of survival of her husband was a

---

[1] Mrs. Niang filed an amended petition for damages on January 30, 2019, substituting the name of the insurance company.

[2] La. R.S. 40:1137.3 provides, in pertinent part:

D. (1) The owner of or entity responsible for a physical fitness facility shall keep an AED on its premises.

***

    (a) "Physical fitness facility" means a facility for profit or nonprofit with a membership of over fifty persons that offers physical fitness services. This term includes but is not limited to clubs, studios, health spas, weight control centers, clinics, figure salons, tanning centers, athletic or sport clubs, and YWCA and YMCA organizations.

[3] YMCA submitted Mrs. Niang's petition for damages in support of its motion for partial summary judgment. In opposition, Mrs. Niang submitted correspondence between the parties. No affidavits or other documentation were submitted by either party.

direct result of YMCA's breach of its statutory duty. Mrs. Niang rejected the assertion that a cause of action for loss of chance of survival is limited to medical malpractice cases.

A hearing on the motion for partial summary judgment was held on February 8, 2019. In providing reasons for its ruling, the trial court stated:

> And let me say this for the record so that it's clear, obviously this body of law, this particular cause of action, as it is being sought to be invoked, doesn't exist at present in this state, pursuant to the Supreme Court's ruling in … *Smith versus State of Louisiana*, 676 So.2d 543, 1996. And in that decision the Supreme Court cited to the Oklahoma Supreme Court case of *Hardy versus South Western Bell Telephone Company*, 910 [P.2d] 1024, also a 1996 case.
>
> But the language that is pertinent to me is the decision only addresses damages in a medical malpractice case and does not consider damages for loss of a chance of survival in cases against other types of tortfeasors. That decision is left for another day. Well that day has arrived [].

By judgment dated February 14, 2019, the trial court granted YMCA's motion for partial summary judgment, dismissing Mrs. Niang's loss of chance of survival claim. The trial court's judgment also designated the judgment as a final appealable judgment pursuant to La. C.C.P. art. 1915. This appeal followed.

### Discussion

The matter currently before this Court presents a *res nova* issue in Louisiana. As her sole assignment of error, Mrs. Niang maintains that the trial court erred in granting YMCA's motion for partial summary judgment, finding that there is no cause of action in Louisiana for loss of chance of survival in non-medical malpractice cases.

3

Mrs. Niang's request for review of the trial court's judgment seeks to have this Court determine whether or not the loss of chance of survival claim can be expanded to non-medical malpractice cases.

As a threshold matter, we note that although styled as a motion for partial summary judgment, YMCA has actually raised an exception of no cause of action. The failure of a plaintiff to state a cause of action may be noticed by this Court on its own motion.[4] La. C.C.P. art. 927; *see also Moreno v. Entergy Corp.*, 2010-2268, p. 3 (La. 2/18/11), 64 So.3d 761, 762. We find that analyzing this case under the procedural device of an exception of no cause of action is more appropriate. Thus, we will consider Mrs. Niang's petition for damages to determine whether or not it states a cause of action for which the law affords a remedy.[5]

### Exception of No Cause of Action

A peremptory exception of no cause of action questions whether the law affords a remedy against a particular defendant under the factual allegations of a petition. *Badeaux v. Southwest Computer Bureau, Inc.*, 2005-0612, p. 7 (La. 3/17/06), 929 So.2d 1211, 1217. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by the effect of law, and hence this exception tends to dismiss or defeat the action." La. C.CP. art. 923. When deciding an exception of no cause of action, a court considers only the petition for damages, amendments to the petition for damages and any documents attached to the petition for damages. *2400 Canal, LLC v. Bd. of Sup'rs of*

---

[4] This Court issued an order on November 7, 2019, affording the parties an opportunity to submit briefs, considering YMCA's summary judgment as an exception of no cause of action. The briefs were timely submitted to this Court.

[5] Exceptions of no cause of action are reviewed under the *de novo* standard of review because it presents a legal question. *O'Dwyer v. Edwards*, 2008-1492, p. 3 (La.App. 4 Cir. 6/10/09), 15 So.3d 308, 310.

*Louisiana State Univ. Agr. & Mech. Coll.*, 2012-0220, p. 7 (La.App. 4 Cir. 11/7/12), 105 So.3d 819, 825.

**Loss of Chance of Survival**

Our analysis begins with a review of the jurisprudential context of the loss of chance of survival claim in Louisiana. The Louisiana Supreme Court has long held that there is a right to recover damages for loss of chance of survival in medical malpractice cases. *See Hastings v. Baton Rouge Gen. Hosp.*, 498 So.2d 713 (La. 1986)*; Smith v. State Through Dept. of Health & Human Resources Admin.*, 523 So.2d 815 (La. 1988)*; Martin v. East Jefferson Gen. Hosp.*, 582 So.2d 1272 (La. 1991).

In *Hastings v. Baton Rouge Gen. Hosp.*, 498 So.2d 713 (La. 1986), our Louisiana Supreme Court reversed the trial court's judgment granting a directed verdict in favor of the hospital and treating physicians. The parents of a stab-wound victim brought a medical malpractice action against the hospital, emergency room physician and thoracic surgeon on call, for wrongful death, when their son died following an attempt to transfer him to another hospital.

Cedric Hastings presented to the emergency room with two stab wounds and weak vital signs. After extensive testing, it was determined that he required a thoracotomy. Since the emergency room physician was not qualified to perform that type of surgery, he contacted the thoracic surgeon on call that evening. After inquiring about whether or not the patient had insurance, which he did not, the thoracic surgeon ordered Mr. Hastings transferred to another hospital. The emergency room physician did not seek another thoracic surgeon and complications ensued during the attempted transfer. After transferring him back to the emergency room, Mr. Hastings died of cardiac arrest.

The Louisiana Supreme Court held that "[a]s a result of [the emergency room physician's] failure to obtain another surgeon and [the thoracic surgeon's] failure to operate, Cedric had no chance of living… ." *Hastings*, 498 So.2d at 721. The Court noted:

> Thus, in a death case, if a defendant physician, by action or inaction, has destroyed any substantial possibility of the patient's survival, such conduct becomes a proximate cause of the patient's death. The law does not require the plaintiff to prove to a certainty that the patient would have lived had he received more prompt diagnosis and treatment for the condition causing the death.

*Id.* (quoting *Brown v. Koulizakis*, 229 Va. 524, 331 S.E.2d 440, 446 (1985)).

Relying on Hastings, our Supreme Court in *Smith v. State, Dep't of Health & Hosps.*, 1995-0038, (La. 6/25/96), 676 So.2d 543, granted certiorari in order to address the method of valuation of damages recoverable in loss of chance of survival actions. *Smith* involved a patient who, approximately fifteen months after his initial hospital stay, was diagnosed with a lethal form of cancer. Benjamin Smith presented to the hospital complaining of a sore on the top of his right foot. He stayed in the hospital for five days and underwent minor surgery to drain the fluid from his foot. While hospitalized, a routine chest x-ray was performed and revealed "a mediastinal mass projected to the right of the trachea." *Smith*, 1995-0038, p. 2, 676 So.2d at 545. A CT scan of the thoracic area was recommended in order to consider lymphoma in the diagnosis. The hospital and physicians failed to notify the family of the Mr. Smith's x-ray results or order further testing during his initial hospitalization.

Mr. Smith returned to the hospital, approximately fifteen months later, complaining of chills, fever and chest pain. A second chest x-ray was performed revealing that the mediastinal mass had doubled in size. It was at this time that Mr.

Smith and his family learned of the previous x-ray report from his initial hospital stay. Upon further testing, Mr. Smith was diagnosed with a lethal form of cancer. Additionally, by the time of his second hospital visit the cancer had progressed and was deemed aggressive. Mr. Smith died nineteen months after his initial hospital stay when the first chest x-ray was performed. *Id*.

The Supreme Court affirmed the appellate court's determination that the plaintiff established that the hospital and the physicians' negligent conduct deprived Mr. Smith of a chance of survival. *Id*., p. 5, 676 So.2d at 546. Therefore, the plaintiff was entitled to seek damages for the loss. *Id.* The Supreme Court further found that "[t]he lost chance of survival in professional malpractice cases has a value in and of itself that is different from the value of a wrongful death or survival claim." *Id.*, p. 9, 676 So.2d at 548. In the case *sub judice*, the trial court cited to footnote 7 of the *Smith* opinion which stated, "[t]his decision only addresses damages in a medical malpractice case and does not consider damages for loss of a chance of survival in cases against other types of tortfeasors. *See Hardy v. Southwestern Bell Tel. Co.*, 910 P.2d 1024 (Okla. 1996). That decision is left for another day." *Smith*, 1995-0038, p. 6, 676 So.2d at 547 n.7. Our research does not reveal any cases directly on point to the facts presented before this Court, and thus we consider, as guidance, decisions from other jurisdictions.

In *Hardy v. Southwestern Bell Tel. Co.*, plaintiff filed a wrongful death action, in the United States District Court for the Northern District of Oklahoma, against Southwestern Bell Telephone Company. Plaintiff alleged that the telephone company's negligence caused the 911 emergency system to fail. Specifically, he maintained that his wife's death was the result of the failure of the 911 emergency systems, which prevented him from promptly receiving emergency assistance after

7

his wife suffered a heart attack. On motions for summary judgment, the district court found that plaintiff could not meet his burden of proof on the causation element in a general negligence action. *Id.* at 1026. Based on its ruling, the district court questioned whether it would be appropriate to apply the reduced standard of causation found in the loss of chance of survival doctrine, since plaintiff could not prove causation in a traditional negligence action. As such, the district court certified the question of the applicability of the lost chance of survival doctrine to non-medical malpractice cases to the Oklahoma Supreme Court. *Id.*

The Oklahoma Supreme Court considered the question of whether the loss of chance of survival doctrine, restricted to certain limited types of medical malpractice cases, applied to ordinary negligence cases that are not brought against a hospital or medical practitioner. *Hardy*, 910 P.2d at 1025. The Oklahoma Supreme Court found plaintiff's causation claim speculative and found no evidence presented that the reduced standard of causation found in a loss of chance claim should be applied to a general negligence action. *Hardy*, 910 P.2d at 1030. The Court stated that "we refuse to effect a total restructuring of tort law by applying the lost chance doctrine beyond the established boundary of medical malpractice to ordinary negligence actions." *Id.*

The *Hardy* Court also considered the public policy implications associated with expanding loss of chance of survival claims to non-medical malpractice cases. The Court noted:

> The public policy concerns of medical practice which have been held to justify a reduced burden of causation in lost chance cases do not transfer over to ordinary negligence cases. Public policy is not served by extending the causation exception to the "but for" rule to other tortfeasors. Under the decisions discussed and other "loss of chance" medical provider opinions, the physician

> had the opportunity to perform properly under the terms of the physician-patient special relationship but was alleged to have failed to do so.
>
> The essence of the doctrine is the special relationship of the physician and the patient. In these cases, the duty is clear, the negligence is unquestioned and the resulting harm, the destruction of a chance for a better outcome, has obvious value and is not so speculative as to be beyond being reasonably considered a result of defendant's negligence.

*Hardy*, 910 P.2d at 1029.

A review of other states' implementation of the loss of chance of survival claim reveals other jurisdictions unwillingness to expand such claims to non-medical malpractice actions. The consensus being that certain public policy considerations dictate not expanding the loss of chance of survival claim outside of a medical malpractice context. *See Roberts v. Ohio Permanente Med. Group, Inc.*, 668 N.E.2d 480 (Ohio 1996) (overruling its previous findings and recognizing the loss of chance of survival claim, in medical malpractice claims, by following the approach as set forth in Restatement (Second) of Torts §323; however, declining to alter traditional principles of causation with regards to other areas of tort law); *Daugert v. Pappas*, 704 P.2d 600 (Wash. 1985) (providing that a patient's misdiagnosis deprives that patient of a chance of surviving, but not willing to expand the loss of chance of survival claim in legal malpractice matters because there is no lost chance to a client who can still have their case reviewed by a higher court); *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397 (Tex. 1993) (declining to adopt the loss of chance doctrine as part of the common law of Texas; further noting that it would be difficult to prevent application of the doctrine to other professions, such as legal malpractice or lost profits for a new business).

While the laws of Louisiana are not governed by the principles of law of other states, we agree with the argument that speculation, regarding causation, may result by applying the loss of chance of survival claim to non-medical malpractice cases. A loss of chance of survival claim is rooted in causation, which is directly linked to medical treatment, or lack thereof, performed by a hospital and/or physician. As noted in *Hardy*, the loss of chance as a result of medical treatment has a definitive value and is not speculative. *Hardy*, 910 P.2d at 1030. In medical malpractice cases, the conduct of the hospital and/or physician is a factor that can conclusively be associated with the loss of chance of survival of a patient. Applying the loss of chance of survival claim to general negligence cases would open the door for speculation as to a person's chance of survival. We find the claims asserted by Mrs. Niang are adequately subsumed in the causation element of the negligence claim against YMCA.

Louisiana courts have not expanded the applicability of the claim of loss of chance of survival to general negligence actions. Outside of judicial recognition, the law-making power of the State is unquestionably vested in the legislature. *See Krielow v. Louisiana Dep't of Agric. & Forestry*, 2013-1106, p. 5 (La. 10/15/13), 125 So.3d 384, 388. "[L]egislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body or authority." *City of Alexandria v. Alexandria Fire Fighters Ass'n, Local No. 540*, 220 La. 754, 758, 57 So.2d 673, 674 (1952). We must follow positive law and case law should not supersede constitutional or legislative authority. *DeBattista v. Argonaut-Southwest Ins. Co.*, 403 So.2d 26, 33 (1981) (citation omitted). Since the Legislature has not yet created law allowing loss of chance of survival claims in non-medical malpractice cases, or as a separate and

10

distinct tort, and the judiciary has not yet expanded it, we find that loss of chance of survival claims are not applicable to non-medical malpractice cases.

In the case *sub judice*, "a summary judgment will not serve as a substitute for an exception of no cause of action." *Sinclair Oil & Gas Co. v. Delacroix Corp.*, 235 So.2d 187, 190 (La.App. 4 Cir. 1970). An exception of no cause of action assesses the legal sufficiency of a petition for damages by determining whether the law affords the plaintiff a remedy, based on the facts alleged within the four corners of the petition. *Ramos v. Liberty Bank & Tr. Co.*, 2018-0612, p. 1 (La.App. 4 Cir. 12/19/18), 262 So.3d 917, 918. "The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition." *Cleco Corp. v. Johnson*, 2001-0175, p. 3 (La. 9/18/01), 795 So.2d 302, 304.

We find the proper context to consider the sufficiency of Mrs. Niang's claim is to determine whether her petition for damages states a cause of action. This Court finds that it does not. Louisiana law has not expanded the loss of chance of survival claim to non-medical malpractice cases. Therefore, based on current Louisiana jurisprudence, and applicable statutory authority, Mrs. Niang's claim for loss of chance of survival is not a cause of action for which Louisiana law affords a remedy in a non-medical malpractice case.

### Conclusion

Our review of Louisiana jurisprudence reveals that our courts limit loss of chance of survival claims to medical malpractice cases. We recognize the lack of statutory or jurisprudential authority for such claims. However, as the intermediate appellate court, we are confined by the law as it exists at this time. The case *sub judice* is before this Court for a determination of whether Mrs. Niang's petition for

11

damages states a cause of action. Based on the pleadings before us, the petition for damages failed to state a cause of action, for which the law affords a remedy, because a loss of chance of survival claim is not recognized in general negligence matters. As noted by the trial court, the particular cause of action of loss of chance of survival, sought to be invoked by Mrs. Niang, does not currently exist in Louisiana. Therefore, we find the trial court did not err in dismissing Mrs. Niang's claim for loss of chance of survival.

**AFFIRMED**